# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRELL STEVENSON,           :

            Petitioner,       :

     v.                :     **Criminal No. 3:12-CR-145**

                      :     **Civil Action No. 3:18-CV-0057[1]**

UNITED STATES OF AMERICA,   :     **(JUDGE MARIANI)**

            Respondent.    :

## MEMORANDUM OPINION

### I. INTRODUCTION

Here the Court considers Petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 in which he alleges that he is actually innocent of the Career Offender sentencing enhancement applied at sentencing, he was denied effective assistance of counsel, and his conviction was obtained in violation of the constitutional protection against double jeopardy. (Doc. 593 at 5.) Petitioner's allegations relate to his October 20, 2014, conviction and April 9, 2015, sentencing. (Docs. 594, 598.) Petitioner also requests appointment of counsel and asserts that he is entitled to an evidentiary hearing. (Doc. 594 at 2, 65.) In conjunction with this Motion, Petitioner filed a Motion to Compel Production of the United States' June 24, 2014,

---

[1] Because the Civil Action Number is assigned for statistical purposes only, relevant filings are docketed at 3:12-CR-145 and all docket references in this Memorandum are to the criminal docket number.

Plea Agreement Proposal. (Doc. 605.) For the reasons discussed below, the Court concludes Petitioner's § 2255 Motion (Doc. 593) is properly granted in part and denied in part: the motion is granted in that the Court concludes Petitioner is entitled to relief on his claim related to multiple convictions for violations of 28 U.S.C. § 922(g); the motion is denied in all other respects. The Court further concludes Petitioner's Motion to Compel (Doc. 605) is properly denied.

## II. BACKGROUND

Petitioner was originally charged in the June 5, 2012, federal grand jury indictment lodged against seven defendants. (Doc. 77.) The Indictment charged Petitioner as follows[2]: Count 1 - conspiracy to distribute 100 grams or more of heroin and an additional quantity of marijuana within 1,000 feet of a school in violation of 21 U.S.C. §§ 846, 841(a)(1), 860, and 841(b) (Doc. 77 at 1-4); Count 2 - unlawful use of a communications facility (i.e., using a cellphone in furtherance of his illegal activity) in violation of 21 U.S.C. § 843(b) (id. at 4-5); Count 4 - unlawful possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j), and 924(a)(2) (id. at 5-6). A federal grand jury returned a superseding indictment on October 16, 2012, which set out the same charges against Petitioner but added an additional defendant. (Doc. 133.)

---

[2] Though the Indictment (Doc. 77), Superseding Indictment (Doc. 133), Second Superseding Indictment (Doc. 384), and Third Superseding Indictment (Doc. 415) use Roman numerals to identify counts charged, most other documents of record do not. For uniformity, the Court will identify counts by the more commonly used numbers.

On June 24, 2014, a one-count Information was filed which charged Petitioner with a violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute a Controlled Substance. (M.D. Pa. Criminal Action No. 3:14-CR-157, Doc. 1.) On the same date, a Plea Agreement was filed. (Cr. A. No. 3:14-CR-157, Doc. 3.) It provided that the total maximum possible sentence for all charges included 20 years in prison and/or fines totaling $1,000,000. (*Id.* at 2 ¶ 3, 10 ¶ 17.) The Arraignment and Plea hearing was scheduled for July 8, 2014. (Cr. A. No. 3:14-CR-157, Doc. 4.) At the hearing, Petitioner's counsel, Gino . Bartolai, informed the Court that Petitioner would not be entering a plea and the Court set a pretrial conference and trial dates. (Cr. A. No. 3:14-CR-157, Doc. 6.) The scheduling order pertained to the operative indictment in 3:12-CR-145. (*See* Cr. A. No. 3:12-CR-145, Doc. 383.)

On July 15, 2015, a Second Superseding Indictment was filed in the above-captioned matter charging only Terrell Stevenson with the following seven counts: Count 1 - Conspiracy to distribute 100 grams or more of heroin and an additional quantity of marijuana within 1,000 feet of a school in violation of 21 U.S.C. §§ 846, 841(a)(1), 860, and 841(b); Count 2 – Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); Count 3 - Unlawful Use of a Communications Facility (i.e., using a cellphone in furtherance of his illegal activity) in violation of 21 U.S.C. § 843(b); Count 4 - Unlawful Possession of a Stolen Firearm in violation of 18 U.S.C. §§ 922(j), and 924(a)(2); Count 5 – Possession of a Firearm in Furtherance of Drug Trafficking

Crime in violation of 18 U.S.C. §§ 924(c) and 924(c)(1)(D)(ii); Count 6 – Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and Count 7 – Possession of a Firearm while a Fugitive from Justice in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2) (*id.* at 7). (Doc. 384 at 1-7.)

On September 9, 2014, the Third Superseding Indictment was filed. (Doc. 415.) As with the Second Superseding Indictment, only Defendant Terrell Stevenson was charged. (*Id.*) The Third Superseding Indictment charged him with the seven counts contained in the Second Superseding Indictment (Doc. 384) and added an eighth count for Fraud in Relation to Identification Documents in violation of 18 U.S.C. § 1028(a)(7). (Doc. 415 at 1-8.)

Petitioner proceeded to trial on all counts. On October 20, 2014, a jury found him guilty of all but Count 5 where the jury found him not guilty. (Docs. 478, 480.) The Final Presentence Investigation Report ("PSR") was filed on March 10, 2015. (Doc. 547.) Mr. Bartolai filed Objections to the Presentence Report in which he raised thirteen specific objections. (Doc. 548 at 6-13.) At sentencing, the Court noted for the record that all objections to the PSR had been overruled at a hearing held on April 7, 2015. (Doc. 584 at 2.) Mr. Bartolai also filed a "Motion for Downward Departure Career Offender Guideline Over-represents Pursuant to U.S.S.G. §4A1.3(b)" (Doc. 561) which was denied at the April 9, 2015, sentencing (Doc. 584 at 18). Petitioner was sentenced to the following terms of imprisonment: 360 months on each of Counts 1 and 2; ninety-six months on Count 3; 120 months on each of Counts 4, 6, and 7; and 240 months on Count 8. (Doc. 568 at 2.) The

4

Court directed that all terms run concurrently with each other to the extent necessary to produce a total imprisonment term of 360 months. (*Id.*) The Court also imposed a fine of $100 on each count for a total of $700. (*Id.* at 3.)

Petitioner filed a Notice of Appeal on April 14, 2015. (Doc. 570.) On direct appeal, Petitioner argued errors related to an order entered by the District Court on a speedy trial issue, the failure of the indictment to charge all the elements of the crime of fraud in relation to identification documents, that the District Court improperly denied motions to suppress, and that his 360-month sentence was unreasonable. *United States v. Stevenson*, 832 F.3d 412, 416 (3d Cir. 2016). The Circuit Court affirmed the judgment of conviction and sentence with its August 9, 2016, Opinion. *Id.*

## III. **STANDARD OF REVIEW**

In pertinent part, 28 U.S.C. § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." *United States v. Cepero*, 224 F.3d 256, 267 (3d Cir. 2000) (*abrogated on other grounds by Gonzalez v. Thaler*, 565 U.S. 134 (2012)) (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994); *Young v. United States*,

124 F.3d 794, 796 (7th Cir. 1997)). Relief is available under Section 2255 only under

exceptional circumstances, when the claimed errors of law are "a fundamental defect which

inherently results in a complete miscarriage of justice," or "an omission inconsistent with the

rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, (1962).

Section 2255 also directs that, in some instances, the court "shall" hold an

evidentiary hearing.

> Unless the motion and the files and records of the case conclusively show that
> the prisoner is entitled to no relief, the court shall cause notice thereof to be
> served upon the United States attorney, *grant a prompt hearing thereon*,
> determine the issues and make findings of fact and conclusions of law with
> respect thereto.

28 U.S.C. § 2255(b) (emphasis added). In *United States v. Booth*, 432 F.3d 542 (3d Cir.

2005), the Court of Appeals for the Third Circuit explained the court's discretion in these

matters:

> Although a district court has discretion whether to order a hearing when a
> defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255,
> our caselaw has imposed limitations on the exercise of that discretion. In
> considering a motion to vacate a defendant's sentence, "the court must accept
> the truth of the movant's factual allegations unless they are clearly frivolous on
> the basis of the existing record." *Government of the Virgin Islands v. Forte*, 865
> F.2d 59, 62 (3d Cir.1989). *See also* R. Governing § 2255 Cases R. 4(b). The
> District court is required to hold an evidentiary hearing "unless the motion and
> files and records of the case show conclusively that the movant is not entitled
> to relief." *Id.* We have characterized this standard as creating a "reasonably low
> threshold for habeas petitioners to meet." *McCoy,* 410 F.3d at 134
> (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir.2001)). Thus, the
> district court abuses its discretion if it fails to hold an evidentiary hearing when
> the files and records of the case are inconclusive as to whether the movant is
> entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting

6

relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

432 F.3d at 545–46.

As a general rule, the petitioner has the burden of proof in § 2255 proceedings. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir.1977). However, as will be discussed in greater detail below, in certain cases involving questions regarding predicate offenses supporting a petitioner's career offender status, courts have determined that the burden remains with the government to show the validity of the career offender designation. *United States v. Harris*, 205 F. Supp. 3d 651, 662 (M.D. Pa. 2016); *United States v. Evans*, No. 02–CR–1, 2015 WL 9480097, at *2 (W.D. Pa. Dec. 29, 2015).

Ineffective assistance of counsel claims are properly raised on collateral review rather than on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner must demonstrate "(1) that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced his client." *Albrecht v. Horn*, 485 F.3d 103, 127 (3d Cir. 2007) (*citing Strickland*, 466 U.S. at 689-92). The Petitioner bears the burden of establishing that counsel's performance prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). Further explanation of the required showing will be set out below.

## IV.  **ANALYSIS**

In his supporting brief, Petitioner identifies alternative arguments to support his assertion that he was improperly designated a career offender and contends that he received ineffective assistance of counsel based on Mr. Bartolai's failure to investigate his prior convictions, failure to investigate and call defense witnesses, failure to argue double jeopardy, failure to adequately cross-examine and impeach government witnesses, and failure to conduct a thorough mitigation investigation.  (Doc. 594 at 1.)   In a document titled "Motion to Amend or Supplement the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and Federal Rule of Civil Procedure 15(c)" (Doc. 598),  which was granted by the Court's January 24, 2018, Order (Doc. 600), Petitioner raises an additional ineffective assistance of counsel claim, asserting that his trial counsel was ineffective in failing to properly advise him of the plea and suggesting that Petitioner would be successful at trial.

### A. **Career Offender Designation**

Petitioner first argues the United States Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), indicates that his prior New York state offenses do not qualify as "controlled substance offenses" under the United States Sentencing Guidelines' Career Offender definition.  (Doc. 594 at 6-10.)  He alternatively argues that his previous New York convictions do not show the requisite intent to distribute drugs which

allow them to serve as predicate offenses for the career offender designation. (*Id.* at 12-20). The Court concludes Petitioner has not shown he is entitled to relief on either basis.

## 1. *Mathis v. United States*

As noted above, Petitioner asserts that *Mathis* precludes using his New York state drug offenses in the calculation of whether he is a career offender. In *Mathis*, the Court considered when a prior offense qualifies as a predicate offense listed in the Armed Career Criminal Act ("ACCA") and concluded that the Iowa burglary statute at issue did not qualify as a predicate offense because it "covered a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary)." 136 S. Ct. at 2251.

> We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense. *See, e.g., Taylor* [*v. United States,* 495 U.S. 575, 602 (1993)]. How a given defendant actually perpetrated the crime—what we have referred to as the "underlying brute facts or means" of commission, *Richardson* [*v. United States,* 526 U.S. 813, 817 (1999)]—makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence. Those longstanding principles, and the reasoning that underlies them, apply regardless of whether a statute omits or instead specifies alternative possible means of commission. The itemized construction gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition.

*Mathis,* 136 S. Ct. at 2251. *Mathis* explained the process used to determine whether a prior conviction is properly used as a predicate offense, discussing "indivisible" and "divisible" statutes and the proper approaches related to each, i.e. the "categorical approach" for the former and the "modified categorical approach" for the latter. *Id.* at 2248-49. Based on the

unusual structure of the Iowa law, the Court clarified the classification of various statutory structures and the application of the relevant approach. *Id.* at 2249-57. In sum, rather than providing a rule of general applicability, *Mathis* made a specific determination concerning the Iowa statute at issue after considering a long line of cases distinguishing divisible and indivisible statutes with the effect that some may not qualify for use in the ACCA or United States Sentencing Guidelines career offender contexts.[3]

The Court now turns to the question of whether Petitioner has satisfied his burden of showing that a conviction pursuant to § 220.16 cannot serve as a predicate offense for the career offender designation. Petitioner avers that *Mathis* and *United States v. Tanksley*, 848 F.3d 347 (5th Cir. 2017) (prior Texas offense of possession with intent to deliver controlled substance did not qualify as controlled substance offense under career offender enhancement), preclude the use of his convictions pursuant to New York Penal Law § 220.16 to find him a career offender because the cases show his convictions do not qualify as "controlled substance offense[s]" under the Sentencing Guidelines' Career Offender definition.[4] (Doc. 594 at 6-11.) Though Petitioner's path from assertion to conclusion is far

---

[3] Regarding the applicability of *Mathis* to Petitioner's claim, the Government states that "*Mathis* did not raise a new rule of constitutional law that has been made retroactive to cases on collateral review." (Doc. 603 at 12 (citing *In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016)).) The Supreme Court noted in *Mathis* that the decision was based on twenty-five years of precedents and did not change methodology previously established. 136. S. Ct. at 2257. Therefore, retroactivity is not a central question here.

[4] Before analyzing the appropriate consideration of the Texas criminal statute at issue, *Tanksley* summarized various approaches used to determine whether a prior conviction serves as a predicate offense for career offender purposes, noting that "some criminal statutes appear divisible but are not. These statutes, rather than providing alternative elements, instead list 'various factual means of committing a single element.'" 848 F.3d at 350 (quoting *Mathis*, 136. S. Ct. at 2249). *Tanksley* noted that "[i]n *Mathis*,

from clear, his argument is rooted in the assumption that § 220.16 is an "indivisible" statute whose elements are broader than those identified in the career offender definition. (*Id.* at 10.)

Based on *Mathis* and the long line of cases cited therein, the Court rejects Petitioner's conclusory approach to the categorization of § 220.16. Rather, *Mathis*, its predecessors, and subsequent decisions indicate that the structure of the specific statute at issue determines what approach a court should use to determine whether the prior conviction serves as a predicate offense. Therefore, here the Court will examine the statute at issue, New York Penal Law § 220.16, in the context of the relevant provision of the United States Sentencing Guidelines ("U.S.S.G."). Under U.S.S.G. § 4B1.1(a):

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*Id.* U.S.S.G. § 4B1.2(b) defines a controlled substance offense as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the

---

the Supreme Court held that the modified categorical approach is not appropriate for this species of criminal statute. *Id.* at 2257. More importantly here, it also 'provided helpful guidance for determining whether a predicate statute of conviction is divisible.' *United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016)." *Tanksley*, 848 F.3d at 350. Based on the relevant factual and legal background, *Tanksley* determined that the statute at issue was indivisible for reasons similar to the Iowa statute considered in *Mathis*. 848 F.3d at 351-52. As in *Tanksley* and *Mathis*, the Court will look to the specific statute at issue here, a statute which is distinguishable from those considered by the Supreme Court and the Fifth Circuit.

possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.*

As recently explained in *United States v. Williams*, 898 F.3d 323 (3d Cir. 2018), the "categorical approach" is ordinarily applied to determine whether a prior conviction qualifies as a controlled substance offense. *Id.* at 333 (citing *Taylor v. United States*, 495 U.S. 775, 588 (1990)).

> We consider only the elements of the crime of conviction and assess whether they fall within the bounds of a crime of violence or controlled substance offense, as defined under the Guidelines. *See, e.g.,* [*United States v. Chapman*, 866 F.3d 129, 133 (3dCir. 2017).] To avoid the "practical difficulties and potential unfairness" inherent in "determining the precise facts underlying a defendant's [prior] conviction," which may have occurred years or decades ago, we do not excavate or dissect the underlying factual record. [*United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016).]
>
> There is an exception, however. When a crime is defined with alternative elements, we may review a limited set of documents—including the indictment and plea colloquy, among others—but only to determine which version of the statute formed the basis of the prior conviction. [*Descamps v. United States*, 570 U.S. 254, 261-62 (2013).] Such a statute is termed "divisible" and this approach—a more record-invasive variant of the categorical approach—is called the "modified categorical approach."

*Williams*, 898 F.3d at 333.[5] The Circuit Court explored when a statute is "divisible" in *United States v. McCants*, 911 F.3d 127 (3d Cir. 2018): "We can look beyond the elements of the

---

[5] In relying on cases decided in the Armed Career Criminal Act ("ACCA") context, the framework set out in *Williams* confirms that precedent defining the categorical and modified categorical approaches decided under the ACCA apply to the United States Sentencing Guidelines' career offender designation. *See, e.g.,* 898 F.3d at 333 (citing *Descamps*, 570 U.S. at 261-62).

statute for this comparison only if it is 'divisible' and lists 'elements in the alternative, and thereby defined[s] multiple crimes.'" *Id.* at 135 (quoting *Mathis*, 136 S. Ct. at 2249). A statute phrased in the disjunctive, using "or" to offset subsections, is divisible "if it lists 'elements' of the offense and not 'means' of committing that offense. . . . 'Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction.'" *Id.* (quoting *Mathis*, 136 S. Ct. at 2256).

> The purpose of the modified categorical approach is to "help effectuate the categorical analysis when a divisible statute ... renders opaque which element played a part in the defendant's conviction." [*Descamps,*133 S. Ct.] at 2283. Once a sentencing court determines the modified categorical approach applies, the court may look beyond the face of the statute to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" to determine which of the alternative elements was involved in the defendant's conviction. *Shepard v. United States,* 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

*United States v. Abbott*, 748 F.3d 154, 157–58 (3d Cir. 2014). Where a statute "can be violated by the possession of and intent to distribute many different drugs, the types of which can increase the prescribed range of penalties, the statute includes several alternative elements and is therefore divisible." *Id.* at 159.

In New York Penal Law § 220.16, thirteen subsections set out in the disjunctive define when a "[a] person is guilty of criminal possession of a controlled substance in the third degree." Knowing and unlawful possession apply to all subsections, each of which identify types of drugs and/or quantities of drugs. *Id.* Seven subsections require "intent to sell." § 220.16(1)-(7). Culpability for the remaining six subsections hinges on the weight of

the prohibited substance. § 220.16(8)-(13). One subsection, § 220.16(2), requires that the defendant have previously engaged in identified conduct. The structure and varying subsection requirements of § 220.16 support the conclusion that the statute is divisible and the modified categorical approach may be applied to determine if a violation of the statute serves as a predicate offense for USSG career offender designation. This has been the conclusion reached in several cases including *United States v. Green*, 480 F.3d 627 (2d Cir. 2007), where the Court of Appeals for the Second Circuit applied the modified categorical approach to determine which subsection of § 220.16 the defendant had been convicted under. *Accord Felder v. United States*, 5:09-CR-676-3, 5:14-CV-411, 2016 WL 6110477, at *2 (N.D.N.Y. Mar. 1, 2016); *United States v. Taylor*, No. 11 CR 310, 2012 WL 5991886, at *3-4 (S.D.N.Y. Nov. 30, 2012) (citing *United States v. Brown*, 97 F. App'x 348, 349-50 (2d Cir. 2004); *United States v. King*, 325 F.3d 110, 114 (2d Cir. 2003)).

This review of the structure and judicial consideration of § 220.16 negates Petitioner's conclusion that the statute is indivisible. (*See* Doc. 594 at 10.) As this is the premise upon which his *Mathis* argument is based (*see id.* at 6-10), Petitioner's assertion that a violation of § 220.16 cannot serve as a predicate offense for the USSG career offender designation is without merit.

## 2. *Petitioner's § 220.16 Convictions*

Petitioner proceeds from the general to the specific with his argument that, in his case, his § 220.16 convictions cannot serve as predicate offenses for the career offender

designation because the record is not clear as to which subsections he pled guilty. (Doc. 594 at 12-20.) The Court disagrees.

As noted above, many courts have determined the government has the burden of demonstrating that career offender status is appropriate when the issue is raised in a § 2255 motion. *United States v. Harris*, 205 F. Supp. 3d 651, 662 (M.D. Pa. 2016); *United States v. Smith*, No. 92-146, 2016 WL 4480072, at *2-3 (W.D. Pa. Aug. 25, 2016); *United States v. Evans*, No. 02–CR–1, 2015 WL 9480097, at *2 (W.D. Pa. Dec. 29, 2015). While the government has the burden of producing *Shepard* documents,[6] *see Evans*, 2015 WL 9480097, at *2, when appropriate documents are produced the petitioner must offer evidence which rebuts the presumptive evidence of the facts stated in the documents or seriously calls the accuracy of the documents into question. *See United States v. Green*, 480 F.3d at 635; *see also United States v. Taylor*, 2012 WL 5991886, at *4.

Petitioner's argument hinges on his assertion that the documents provided by the Government at trial did not show which of two potentially applicable § 220.16 subsections applied and he has never admitted, nor has the government proven, that he had the requisite intent to distribute the controlled substances in question. (*See* Doc. 594 at 12-13.)

In relevant part, § 220.16 provides as follows:

A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses:

---

[6] The limited documents reviewable in applying the modified categorical approach are known as "Shepard documents" based on the Court's decision in *Shepard v. United States*, 544 U.S. 13 (2005), where the Court discussed acceptable documents for review.

> 1. a narcotic drug with intent to sell it; or
>
> . . .
>
> 12. one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more . . .

Section 220.16(1), (12).

At trial, the Government exhibited Petitioner's two New York felony drug convictions under § 220.16. (Doc. 603 at 15; Doc. 582 at 130-32 (Transcript of Proceedings, October 20, 2014, entering Certificates of Conviction into evidence).) Specifically, the Certificate of Conviction dated July 15, 2004, states that Petitioner

> was convicted by plea of the offense of: Criminal Possession Controlled Substance in the Third Degree, in violation of Section 220.16(1) of the Penal Law, a Class B Felony; and Criminal Possession of a Weapon in the Third Degree, in violation of Section 265.02(3) of the Penal Law, a Class D Felony and on May 14, 2004, a Judgment of Conviction was entered in this Court and sentence was imposed . . . .

(Doc. 594 at 72.) The Certificate of Conviction dated July 18, 2014, states

> [t]his is to certify that on September 14, 2009, . . . the above-named Defendant was convicted by plea of the offense of: Criminal Possession Controlled Substance in the Third Degree, in Violation of Section 220.16(1) Penal Law, Class B Felony and on July 9, 2014, a Judgment of Conviction was entered in this Court and sentence was imposed . . . .

(Doc. 594 at 76.)

Petitioner maintains these Certificates are not sufficient to show that he was convicted of a violation of subsection (1) of § 220.16.[7] (Doc. 594 at 17.) The argument is without merit in that a Certificate of Conviction is an acceptable *Shepard* document and Petitioner has presented no serious challenge to the accuracy of the Certificates at issue here.

*Shepard* ruled that the court's inquiry into the nature of the offense of conviction "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, *or to some comparable judicial record of this information.*" 544 U.S. at 26 (emphasis added). In New York, "[a] certificate issued by a criminal court, or the clerk thereof, certifying that a judgment of conviction against a designated defendant has been entered in such court, *constitutes presumptive evidence of the facts stated in such certificate.*" N.Y. Crim. Proc. Law § 60.60(1) (emphasis added). Thus, each State of New York Certificate of Conviction produced in this case creates the presumption that Petitioner was convicted under § 220.16(1).

---

[7] Petitioner's reference to the absence of plea and sentencing transcripts is without significance. *United States v. Hernandez,* 218 F.3d 272 (3d Cir.2000), held that when the accuracy of a Certificate of Disposition is "seriously" questioned, the district court should consider "easily produced court documents, such as a plea colloquy," *id.*at 279, to determine whether a given Certificate of Disposition is accurate. As noted in *Green,* reference to the plea colloquy is only needed when the accuracy of the document proffered is seriously disputed. 480 F.3d at 633.

Petitioner's attempt to cast doubt on these documents is unavailing. His reliance on claimed errors/inconsistencies found in the Uniform Sentence and Commitment Form related to the January 21, 2008, offense (September 14, 2009, conviction) may support the finding of a typographical error in the listed "Accusatory Instrument Charge(s)" where § 220.*15* is as one of three identified charges (*see* Doc. 594 at 18, 86 (emphasis added)), but the crime of conviction set out therein is clear: Petitioner was convicted of "CPCS 3rd Degree, Class B Felony" under section "220.16(1)" (*id.* at 86). Similarly, in light of the consistency between the Uniform Sentence and Commitment Form crime of conviction and the relevant Certificate of Conviction (*see* Doc. 594 at 76, 86), Petitioner's citation to the court transcript of October 20, 2014, wherein the Government attorney, Michelle Olshefski, stated that the Certificate of Conviction dated July 9, 2014, indicated that Petitioner violated section "220.16(*17*)" shows nothing more than a misstatement on the attorney's part or a typographical error on the part of the court stenographer. (*See* Doc. 582 at 131 (emphasis added).)

In his reply brief, Petitioner conclusorily relies on *United States v. Green, supra* p. 14, to support his claim that the record does not show his "conviction was in fact for violating subsection 01 or for a different subsection [which is] relevant to whether he committed a felony that has an element of intent." (Doc. 604 at 22.) In *Green*, the Commitment Order and Certificate of Disposition showed that the defendant pleaded guilty to "'ATTEMPTED' possession," the Commitment Order did not reference, by words or citation, that there was

18

an intent element to the crime to which he pleaded guilty, the only document or evidence stating the offense of conviction was the Certificate of Disposition with its notation that the defendant was convicted of "PL 110-220.16 01," and evidence suggested that the "01" designation could have been the default subsection designation at the time entered. 480 F.3d at 632-34. Here the documents consistently show that Petitioner's crime of conviction was § "220.16(1)" (Doc. 594 at 72, 76, 86 (emphasis added)), and there is no evidence that the "01" default subsection designation which provided a basis for further consideration in *Green*, 480 F.3d at 634-35, was used in a document related to Petitioner's relevant convictions.

Because Petitioner has failed to cast doubt on the presumptive accuracy of the Certificates of Conviction, he has not shown that the use of these convictions, i.e., knowingly and unlawfully possessing "a narcotic drug with *intent* to sell it," § 220.16(1) (emphasis added), were improperly considered predicate offenses for his career offender designation.

## B. Ineffective Assistance of Counsel

As set out above, Petitioner raises numerous ineffective assistance of counsel claims. Under the first prong of the analysis set out in *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must demonstrate that counsel's performance was deficient, that is, it fell below an objective standard of reasonableness. *Albrecht*, 485 F.3d at 103 (*citing Strickland*, 466 U.S. at 689-92). The appropriate measure of attorney performance is

"reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.* at 689; *see also Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir.1999). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 38 (1986).

The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense. *Albrecht,* 485 F.3d at 127 (*citing Strickland,* 466 U.S. at 689-92). Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691. To establish prejudice, the defendant must

> show that there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission. A reasonable probability is a probability sufficient to undermine confidence in the outcome. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

*Hinton v. Alabama,* 571 U.S. 263, 275 (2014) (citations omitted).

*Strickland* further held that both prongs must be established in order to meet the claimant's burden, and that if either prong is not satisfied the claim must be rejected. 466 U.S. at 697. The Court also explained that the reviewing court has discretion in applying the standard:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.*

### 1. Challenge to Prior Convictions

Petitioner contends trial counsel was ineffective for failing to investigate and challenge his prior 2004 and 2009 New York convictions regarding the intent required for career offender purposes. (Doc. 594 at 21.) The Court's conclusion that the § 220.16 convictions properly served as predicate offenses for the USSG career offender designation forecloses Petitioner's ability to show "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Albrecht*, 485 F.3d at 127 (*quoting Strickland*, 466 U.S. at 694). In other words, Petitioner cannot show prejudice because trial counsel would not have had a basis to argue the

convictions did not count as predicate offenses for the career offender designation and, if he attempted to make such an argument, it would have failed on its merits.

## 2. Double Jeopardy[8]

### a. Counts 1 and 2

Petitioner alleges that counsel was ineffective for failing to argue a violation of the Fifth Amendment's Double Jeopardy Clause based on the sentences imposed on Counts 1 and 2 because he was convicted in both counts for violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 860(a), and § 841(a)(1) is a lesser included offense of § 860. (Doc. 594 at 23 (citing *United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006)).) As charged in the Third Superseding Indictment, Count 1 is for a violation of 21 U.S.C. § 846, Conspiracy to Distribute Controlled Substances, and Count 2 is for a violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute a Controlled Substance. (Doc. 415 at 1-3.) The Government responds that Petitioner's double jeopardy claim is factually incorrect. (Doc. 603 at 16-17.) The Court concludes Petitioner has not satisfied his burden of showing a double jeopardy violation or ineffective assistance of counsel on this issue.

---

[8] In his 28 U.S.C. § 2255 form filing, Petitioner identifies "Conviction obtained by a violation of Double Jeopardy" as a distinct ground for relief. (Doc. 593 at 5.) In his supporting brief, he identifies counsel's failure to argue Double Jeopardy as a basis for his ineffective assistance of counsel claim. (Doc. 594 at 1.) However, in the argument section of his brief, he addresses one aspect of his claim (based on Counts 1 and 2) as both a freestanding claim and an ineffective assistance of counsel claim (*id.* at 23-27), but he does not specifically address related ineffective assistance of counsel in his multiplicity double jeopardy argument (*id.* at 28-31). Given the liberal standard applied to *pro se* filings, *Haines v. Kerner*, 404 U.S. 519 (1972), the Court will consider the claims broadly.

"Multiple convictions and sentences, unauthorized by Congress, affect substantial rights. . . . The Right to be free from duplicative prosecutions and punishments is a hallmark of American Jurisprudence." *United States v. Tan*, 577 F.3d 533, 539 (3d Cir. 2009) (internal citations omitted). In *United States v. Jackson,* 443 F.3d 293 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit agreed with other courts of appeal which had reached the conclusion that § 841(a)(1) was a lesser included offense of § 860(a). *Id.* at 301 (listing cases). Section 860 provides the following in pertinent part:

> Any person who violates section 841(a)(1) of this title . . . by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided in subsection (b)) subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense.

21 U.S.C. § 860 (a).

*Jackson* agreed with the reasoning of other circuits and concluded that "to find [the defendant] guilt of § 860, the [c]ourt must have first found him guilty of § 841(a)(1)." 443 F.3d at 301. *Jackson* further agreed that "where a district court erroneously sentenced a defendant for violating both § 841(a)(1) and § 860(a)," the conviction and sentence for violating § 841(a)(1) should be vacated. *Id.* at 301-02.

Petitioner relies on *Jackson* to support his argument that the imposition of terms of imprisonment and fines on each of Counts 1 and 2 constitutes double jeopardy because the

23

counts are based on the same underlying conduct and 21 U.S.C. § 841(a)(1) is a lesser included offense of 21 U.S.C. § 860(a). (Doc. 594 at 23-25.) As will be discussed in greater detail below, Petitioner's argument fails because Petitioner was sentenced with respect to Count 1 for conspiracy and in Count 2 for the separate substantive offense.

The Government asserts that Petitioner's argument fails because § 860 was applicable only to Count 1 for conspiracy pursuant to 21 U.S.C. § 846. (Doc. 603 at 18-19.) The Government also makes the important distinction between the crime of conspiracy to commit an offense and the substantive offense underlying the conspiracy which are distinct crimes and do not merge into a single punishable act. (Id.)

The Court agrees that the distinction is dispositive of Petitioner's double jeopardy claim. 21 U.S.C. § 846, as charged in Count 1, provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 841(a)(1), as charged in Count 2, provides that "it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." Importantly, the distinction between conspiracy and related substantive offenses is well-established:

> It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. *Clune v. United States*,

> 159 U.S. 590, 594, 595, 16 S.Ct. 125, 126, 40 L.Ed. 269. A conviction for the conspiracy may be had though the substantive offense was completed. *See Heike v. United States*, 227 U.S. 131, 144, 33 S.Ct. 226, 228, 57 L.Ed. 450, Ann.Cas.1914C, 128. And the plea of double jeopardy is no defense to a conviction for both offenses. *Carter v. McClaughry*, 183 U.S. 365, 395, 22 S.Ct. 181, 193, 46 L.Ed. 236. It is only an identity of offenses which is fatal. *See Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489. Cf. *Freeman v. United States*, 6 Cir., 146 F.2d 978. A conspiracy is a partnership in crime. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253, 60 S.Ct. 811, 858, 84 L.Ed. 1129. It has ingredients, as well as implications, distinct from the completion of the unlawful project.

*Pinkerton v. United States*, 328 U.S. 640, 643–44 (1946).

As applied to this case, Petitioner's conviction for "**conspiracy** to distribute or possess with intent to distribute heroin within 1,000 feet of the elementary school named Howard Gardner Discovery School" (Doc. 478 at 3 (emphasis added)), is a conviction under Count 1 for **conspiring** to commit the offense identified in § 860(a) and not for the commission of that offense. In Count 2, the count addressing the commission of the substantive drug offense, Petitioner was not convicted of distributing or possessing with intent to distribute heroin within 1,000 feet of the elementary school in violation of § 860(a), rather he was convicted of "possession with intent to distribute the controlled substance heroin, between in or about the beginning of September 2011 through May 2012." (Doc. 478 at 4.) The record clearly shows Petitioner was sentenced in Count 1 for "**Conspiracy** to Distribute and Possess with Intent to Distribute 100 Grams or More of Heroin and Marijuana Within 1,000 feet of a School in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b), and 860," and in Count 2 for "**Distribute and Possession with Intent to Distribute** Heroin" in

violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(C).  (Doc. 568 at 1 (emphasis added).)

He was sentenced to 360 months imprisonment on each of Counts 1 and 2, with the terms

to run concurrently.  (*Id.* at 2.)  Petitioner was also ordered to pay a special assessment of

$100 on each count.  (*Id.* at 3.)

This review of the record leaves no doubt that Petitioner was found guilty of

conspiracy pursuant to 21 U.S.C. § 846 (Count 1) and the substantive offense underlying

the conspiracy, a violation of 21 U.S.C. § 841(a)(1) (Count 2) with a concurrent term of

imprisonment imposed on each count and a special assessment of $100 on each count.

(*See* Doc. 568 at 2, 3.)  The crimes are statutorily distinct and were charged as such in the

Third Superseding Indictment (Doc. 415 at 1-3); the jury was properly instructed regarding

the distinction (Doc. 582 at 89-96); the Special Verdict Questions accurately reflected the

distinction between the counts charged and the fact that § 860 related only to the

conspiracy charge (Doc. 478 at 1-4); and Petitioner was sentenced for conspiracy in Count

1 and for the commission of the substantive drug offense in Count 2 (Doc. 568).  Petitioner

was not charged with a substantive violation of 21 U.S.C. § 860 and no additional or

separate sentence or assessment was imposed based on a substantive violation of § 860.

Because Petitioner was not charged with or convicted of a substantive § 860(a) violation, §

841(a)(1) cannot be considered a lesser included offense of such a violation in this case.

Thus, the reasoning of *Jackson* has no application here and Petitioner's reliance on the

decision is misplaced.   443 F.3d 293.  Because Petitioner has not shown a double jeopardy

issue based on his convictions for Counts a 1 and 2, he cannot show that his counsel's performance was deficient on the basis alleged.

## b. Multiplicity Involving Firearm Charges

Petitioner asserts the three firearm charges in the Third Superseding Indictment (Counts 4, 6, and 7) "are impermissibly multiplicitous because they arise from a single incident of firearm possession involving the same gun." (Doc. 594 at 28.) The Government responds that Petitioner offers no factual support for his claim that the multiple firearm charges unfairly prejudiced the jury, he does not specifically allege that his counsel was ineffective for failing to raise the claim, and multiplicity charges should be raised pretrial or they may be deemed waived. (Doc. 603 at 21-22.) The Court agrees that Petitioner does not allege ineffective assistance of counsel in this subsection of his brief. (*See* Doc. 594 at 28-31.) However, Petitioner's multiplicity claim raises double jeopardy issues which warrant consideration.

As the Court of Appeals for the Third Circuit has explained,

[m]ultiplicity is the charging of a single offense in separate counts of an indictment. *United States v. Carter,* 576 F.2d 1061, 1064 (3d Cir.1978); Charles Alan Wright & Andrew D. Leipold, Federal Practice & Procedure: Criminal § 142 (4th ed. 2008). A multiplicitous indictment risks subjecting a defendant to multiple sentences for the same offense, an obvious violation of the Double Jeopardy Clause's protection against cumulative punishment. *See* [*Missouri v. Hunter,* 459 U.S. 359, 366 (1983)]; [*United States v. Pollen,* 978 F.2d 78, 83 (3d Cir. 1992)]. The purpose of the constitutional protection against duplicative punishment is "to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

27

*United States v. Kennedy*, 682 F.3d 244, 254–55 (3d Cir. 2012). A multiplicitous indictment itself does not demonstrate a constitutional violation, it is the resulting conviction and sentence that gives rise to constitutional issues, and these concerns may be addressed at sentencing. *Id.* at 253 (citing *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992)). It is well accepted that double jeopardy problems can be resolved at the sentencing stage. *United States v. Blyden*, 930 F.2d 323, 328 (3d Cir. 1991) (citing *Ohio v. Johnson*, 467 U.S. 493, 500 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting ... for such multiple offenses in a single prosecution")). "To say that a convicted felon may be prosecuted simultaneously" on multiple counts for the same unit of prosecution "is not to say that he may be convicted and punished for two offenses." *Ball v. United States,* 470 U.S. 856, 861 (1985).

Petitioner specifically asserts that "the multiplicitous indictment prejudiced the jury against him by creating the impression of more criminal activity on his part than may have been present." (Doc. 594 at 28.) He further argues that the multiple convictions and separate sentences on the three firearms counts violated his rights because all should have been part of a single crime. (*Id.* at 594.)

The authority cited above indicates that a claim of ineffective assistance of counsel based on the assertion that the *indictment* is multiplicitous would fail because multiple charges in an indictment do not violate double jeopardy principles. *Kennedy*, 682 F.3d at

253-55. (3d Cir. 2012). However, whether the failure to object to multiple convictions and sentences for the firearm charges could support an ineffective assistance claim warrants further inquiry.

A panel of the Court of Appeals for the Third Circuit considered the defendant's argument that the district court had erred by imposing separate sentences for violations of 18 U.S.C. § 922(g)(1) and § 922(g)(3) in *United States v. Zareck*, 588 F. App'x 100, 101 (3d Cir. 2014) (not precedential). After noting that the Assistant United States Attorney conceded that the impositions of two sentences was error, the Court stated "[t]hough we have not yet resolved this particular issue, our sister circuit courts of appeals have unanimously found that although a defendant may be charged with violations of multiple subsections of 18 U.S.C. § 922(g), it is impermissible to impose separate sentences for each violation." *Id.* (citing *United States v. Parker*, 508 F.3d 434, 441 (7th Cir. 2007); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006); *United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000)). *Zareck* noted that the cited cases were consistent with the Third Circuit's view that it is impermissible to have multiple convictions for possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1) arising from a single incident of possession. *Id.* at n.8 (citing *United States v. Tann*, 577 F.3d 533, 537 (3d Cir. 2009)).

*Zareck* and the decisions it relies upon do not support Petitioner's argument that the three firearm charges (Count 4 § 922(j) violation, Count 6 § 922(g)(1) violation, and Count 7 § 922(g)(2) violation) were multiplicitous in that the cases address only multiple § 922*(g)*

charges and convictions, and not any other subsection of § 922. Therefore, the Court will
look only at whether Petitioner's allegations regarding the § 922(g) violations in Counts 6
and 7 support his double jeopardy claim.

Here Count 6 of the Third Superseding Indictment charged a violation of § 922(g)(1)
(Felon in Possession of a Firearm) and Count 7 charged a violation of § 922(g)(2)
(Possession of a Firearm while a Fugitive from Justice). (Doc. 415 at 6, 7.) Both counts
stated that "[o]n or about the 22nd day of May, 2012, . . . the defendant . . . did knowingly
possess a firearm, namely a .380 caliber Sig Sauer, serial number S025163." (Id.) These
identical statements indicate Petitioner was charged under multiple sections of § 922(g) for
the same incident. Petitioner was found guilty of both counts and the Court imposed
separate sentences and fines for each. (Doc. 480 at 1-3.)

Zareck and the cases upon which it relies do not support the Government's assertion
that multiplicity claims must be raised before trial. (See Doc. 603 at 22.) The cases also
refute the Government's argument that Petitioner's claim fails because multiplicity does not
occur if each challenged count requires proof of facts that the other counts do not." (Id.
(citing Blockburger v. United States, 284 U.S. 299, 304 (1932)).)

Rather, under Zareck, the Court's imposition of separate sentences for Counts 6 and
7, for violations of § 922(g)(1) and § 922(g)(2), was impermissible. Zareck indicates that the
sentences on the separate counts must be vacated and the district court should
appropriately resentence the defendant. 588 F. App'x at 101 (citing Parker, 508 F.3d at

441; *Ball v. United States*, 470 U.S. 856 (1985)). Thus, for purposes of this § 2255 Motion,

Petitioner's multiplicity double jeopardy claim points to a defect which warrants relief. To

the extent *Zareck* relies on the *Parker/Ball* analysis for the proper remedy for multiplicitous §

922(g) convictions and sentences, the Court, by separate memorandum and order, will

follow their guidance in addressing the multiplicity issue in Counts 6 and 7.[9]

### 3. Failure to Call Gregory Bush

Petitioner next asserts that trial counsel was ineffective for "failing to conduct a

reasonable investigation into Gregory Bush . . . and failing to call Gregory Bush as a

witness." (Doc. 594 at 35.) The Government responds that Petitioner has not rebutted the

presumption of effectiveness rendered by his trial counsel. (Doc. 603 at 24.) The Court

concludes Petitioner has not satisfied his burden of showing error on the basis alleged.

---

[9] As noted in the text, Petitioner does not specifically raise an ineffective assistance of counsel claim in the section of his brief addressing multiplicity. (Doc. 28-31.) The Court makes two related points. First, if Petitioner had raised such a claim, further discussion would not be warranted because the Court will provide direct relief for the alleged wrong. *See Parker*, 508 F.3d at 442. Second, if the Court were to undertake an ineffectiveness analysis, Petitioner could not satisfy the first prong of the analysis. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton*, 571 U.S. at 274 (citing *Williams v. Taylor*, 529 U.S. 362, 395 (2000)). The question of whether Petitioner's counsel's performance "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, would have to be answered in the negative given the facts of this case and the challenged conduct "viewed at the time," *Kimmelman*, 477 U.S. at 381. Petitioner's counsel's failure to object to the multiplicitous § 922(g) convictions in October 2014 (October 20, 2014, conviction (Doc. 40)) and sentences in April 2015 (April 9, 2015, sentencing (Doc. 568)) would have been objectively reasonable given that *Zareck* was a non-precedential opinion filed on December 12, 2014, 588 F. App'x 100. While *Zareck* stated that the Assistant United States Attorney identified "appropriately conced[ed] the district court erred by imposing sentences" for multiple § 922(g) errors, *id.* at 101, the concession was not based on a precedential Third Circuit opinion. Further no precedential opinion was issued between December 2014 and the April 9, 2015, sentencing. On these facts, Petitioner's counsel's performance could not be deemed unreasonable.

31

Due to the strong presumption of attorney competence that *Strickland* mandates, where a petitioner claims that his counsel had been ineffective for failing to call potentially important exculpatory witnesses, the assessment of trial counsel's judgment involves not simply giving the attorney the benefit of the doubt, but also "'affirmatively entertain[ing] the range of possible reasons [petitioner's] counsel may have had for proceeding as [he] did.'" *Branch v. Sweeney,* 758 F.3d 226, 235 (3d Cir. 2014) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011)).

As to the second prong, a petitioner must show that, but for trial counsel's failure to call the identified witness, there is a reasonable probability that the result of the trial would have been different. *Hinton,* 571 U.S.at 275; *Strickland* 4666 U.S. at 694. As noted previously, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In *Branch,* the Court of Appeals for the Third Circuit noted that the prejudice prong involved "looking at the 'totality of the evidence at trial,' meaning that 'a verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" 758 F.3d at 238 (quoting *Grant v. Lockett,* 709 F.3d 224, 235 (3d Cir. 2013)). *Branch* also noted that the Supreme Court has cautioned that the "'likelihood of a different result must be substantial, not just conceivable.'" *Id.* (quoting *Harrington v. Richter,* 562 U.S. 86, 112 (2011)). In the case of counsel's failure to call witnesses, *Branch* phrased the prejudice inquiry to be whether there was a "substantial

32

likelihood" that the testimony of the witnesses who did not testify would have changed the outcome of the trial. *Id.* at 238.

Petitioner relies on Gregory Bush's Sworn Affidavit filed on September 19, 2013 (Doc. 594 at 33 (citing Doc. 296)), Mr. Bartolai's discussion of Mr. Bush as a potential witness at trial (*id.* at 37-38), and testimony of Government witnesses William Nelson and Lamar Thomas, Jr., (*id.* at 40-44). He posits that it was unreasonable for Mr. Bartolai not to call Mr. Bush whose testimony undermined that of the Government witnesses when Mr. Bush was available and willing to testify. (Doc. 594 at 34-40.)

Mr. Bush's notarized Affidavit states

I hereby certify that, I GREGORY BUSH, states Terrell Stevenson, did not have any involvement with me (GREGORY BUSH) in any drug transaction in Scranton Pennsylvania, or any where else in the States of Pennsylvania. MR. Stevenson had no involvement with me (GREGORY BUSH) out side of promotion, and distribution of his music. Music in which was recorded at HOOD PROMO studios. I admit receiving payments from Terrell Stevenson for these purposes, and these purposes only.

Furthermore, I, GREGORY BUSH, will only testify on the behalf of my co-defendant(s) in the above listed matter, and not for the government. I am not under duress at the time of this writing.

(Doc. 296 at 1.) Petitioner adds that Mr. Bush informed him "on or about February 2014" that he had not heard from Mr. Bartolai and, despite Petitioner's information that Mr. Bartolai had told him Mr. Bush's lawyer did not want him to talk to his client, Mr. Bush continued to express a willingness to go to court for Petitioner. (Doc. 594 at 34.)

33

In his supporting brief, Petitioner asserts he has satisfied the prejudice prong "by naming the witness, demonstrating the witness was available to testify and would have done so, setting out the content of the witness' proposed testimony and showing the testimony would have been favorable to his defense." (Doc. 594 at 44.) In his reply brief, Petitioner posits that "[t]here is a reasonable probability that this omission prejudiced Petitioner because if Gregory Bush had testified consistently with his sworn affidavit, the verdict could have been different at Petitioner's trial." (Doc. 604 at 14.)

The deference due Mr. Bartolai's decision not to call Mr. Bush is not undermined by Petitioner's allegations regarding Mr. Bush's availability and willingness to testify. In his averment regarding his February 2014 conversation with Mr. Bush, Petitioner acknowledges that Mr. Bush's lawyer did not want Mr. Bartolai talking to Mr. Bush. (Doc. 594 at 34.) This alone indicates the path to Mr. Bush testifying at trial was not clear. Discussion of the matter on the third day of trial emphasizes this point. Mr. Bartolai addressed the Court about Mr. Bush's availability and related problems he had encountered. (Doc. 581 at 3, 6-9.) He first stated Mr. Bush was under subpoena but he was reluctant to call him, adding "I would say I'm not going to call him. I'm going to talk to the Defendant about that, you know, and that's it." (*Id.* at 4.) He also said that he did not know whether his client would agree with his decision not to call Mr. Bush. (*Id.* at 6.) Ms. Olshefski raised the possibility of Mr. Bush showing up and "taking the Fifth" because, if he testified, he could open himself up to further criminal charges and he had not yet been sentenced on his plea of guilty which

resulted from the superseding indictment in this case. *Id.* at 7. A discussion about Mr. Bush

testifying followed:

> THE COURT: Well, let's talk about Bush for a moment. Refresh my recollection as to Mr. Bush. He's awaiting sentence?
>
> MS. OLSHEFSKI: Yes.
>
> THE COURT: He, obviously, didn't enter into a plea agreement that contained any cooperation provisions.
>
> MS. OLSHEFSKI: That is correct.
>
> THE COURT: So he's in a posture, Gino, where he's either going to voluntarily testify for you or he's not.
>
> MR. BARTOLAI: That's right.
>
> THE COURT: But you don't know.
>
> MR. BARTOLAI: I have an investigator -- our efforts to talk to Mr. Bush have stopped -- have been stopped by Mr. McGraw, his lawyer. But there's a back discussion, of course, where he wants to testify and he has written an affidavit, which is filed with the Court, you know.
>
> THE COURT: Well, how do we deal with the eventuality of Bush showing up, and unbeknownst to us and unanticipated by us, he takes the Fifth?
>
> MS. OLSHEFSKI: Well, he would have to take the Fifth outside the presence of the jury, but we would have to have -- he would be open to full cross examination, and that's the part that would expose him, I believe, to further criminal charges. Because, I believe, if he testifies, he would be lying, and I would be in a position to prove that.
>
> THE COURT: All right, well, has Joseph McGraw been contacted?
>
> MR. BARTOLAI: Yes. I've made a -- put a phone call in to him, I emailed him last night, I attached a copy of the document, the affidavit that Bush had filed,

I advised him that there was a DEA 6 where Bush said that Stevenson wasn't involved.

And I asked for his cell phone number, so that I could get ahold of him to let him know when this was going to happen. I told him where we are in the trial and so on. I have his number here, I have my cell phone in the courtroom, I'm able to call him, when I could see there's a point that we might get to him, you know.

THE COURT: So his testimony is a possibility?

MR. BARTOLAI: I don't think it is. I'm reluctant -- I don't plan on calling Mr. Bush.

(Doc. 581 at 7-9.) This discussion indicates that Mr. Bartolai had tried to interview Mr. Bush and he had been unable to do so, he had gotten a subpoena in the event he wanted to call Mr. Bush, the problems with calling him to testify were aired, Ms. Olshefski had stated she could show Mr. Bush to be lying if he testifed, and Mr. Bartolai ultimately made a conscious decision not to call Mr. Bush. On this record, the Court cannot conclude Petitioner has shown the decision not to call Mr. Bush was unreasonable.

Even assuming *arguendo* that Petitioner could satisfy the first *Strickland* prong, he has not satisfied the second prong. Though Petitioner states he has satisfied the prejudice prong based on Mr. Bush's availability and his favorable proposed testimony (Doc. 594 at 44), the foregoing discussion raises a significant question about availability. It also shows that the ultimate favorability of the proposed testimony was a significant consideration given the potential harm of Mr. Bush being impeached. The questionable favorability of Mr.

Bush's testimony weighs on the determination of whether Petitioner can show a substantial

likelihood of a different result. *Harrington,* 562 U.S. at 112

Importantly, Defendant does not attempt to discredit the recitation of evidence

provided by the Government in support of the assertion that "proof of Stevenson's guilt was

overwhelming, the jury's verdict was neither unreliable nor was it fundamentally unfair."

(Doc. 603 at 26.) The Government cites the following evidence:

> dozens of intercepted phone conversations and text messages between
> Stevenson and coconspirators involving heroin trafficking, (App. Rec. 1243-
> 1320, 1357-13998); video surveillance photos of Stevenson and
> coconspirators meeting at Hood Promo for purpose of drug trafficking as
> corroborated by intercepted phone conversations and text messages, (App.
> Rec. 1321-1326, 1413-1417); the testimony of Chelsea Smith who told the jury
> that she sold heroin for Stevenson in order to feed her own drug habit, (App.
> Rec. 315-358); the testimony of Amanda Kirkwood who told the jury that she
> purchased heroin from Stevenson on a daily basis over a period of months,
> and the purchases occurred face to face with Stevenson in a dance club, (App.
> Rec. 989-1005); the testimony of Special Agent William Langan who told the
> jury about arresting Stevenson in his bedroom, about finding the stolen firearm
> in a night table next to Stevenson's bed, about the approximately 400 bags of
> heroin found at Stevenson's residence and the particular stamps the bags bore,
> about finding Chris Taylor hiding beneath Stevenson's bed, about Stevenson's
> possession of the fraudulent Georgia driver's license in the name of MGH
> (relevant to count eight of the third superseding indictment), and about
> fraudulent credit cards bearing the name "E. Truitt," (App. Rec. 854-891, 1055-
> 1056); the testimony of DEA Task Force Officer Joseph Coffay who told the
> jury about standing on the lawn outside of Stevenson's residence at the time
> law enforcement entered the residence when suddenly, from Stevenson's
> bedroom, a package containing bundles of heroin was tossed and landed at
> his feet, (App. Rec. 831-854); the testimony of Frank Benaquisto who told the
> jury that he was the true owner of the .380 Sig Sauer firearm in question, how
> the firearm was stolen from his work truck at an earlier time, and how he
> reported the theft to the Pennsylvania State Police, (App. Rec. 905-910); and
> the testimony of William Nelson and Lamar Thomas, coconspirators of
> Stevenson, who testified and explained to the jury the meaning of the dozens

of intercepted phone conversations and text messages that occurred between themselves and other members of the conspiracy, including Stevenson, and further testified and confirmed the fact that they were involved in a conspiracy to traffic in heroin with others, and that Stevenson was a part of that conspiracy. (App. Rec. 480-624, 629-774.)

(Doc. 603 at 26-27 n.9.)

Nothing before the Court indicates that the jury's verdict was only weakly supported by the record so this is not a case where the verdict would more likely have been affected by counsel's error. *Branch*, 758 F.3d at 238. Rather, here the totality of the evidence does not support a conclusion that the likelihood of a different result was substantial. *Harrington*, 562 U.S. at 112. The jury would have heard Mr. Bush's testimony in the context of significant evidence from multiple sources implicating Petitioner in the crimes charged. Further, as discussed above, Petitioner cannot show the substance of Mr. Bush's testimony with any degree of certainty nor has he addressed the problem of impeachment of Mr. Bush if he had testified at trial. Therefore, the Court cannot conclude Petitioner has satisfied his burden of showing a substantial likelihood that Mr. Bush's testimony would have changed the outcome of his trial. *Branch*, 758 F.3d at 238.

### 4. *Failure to Cross-Examine Witnesses*

Petitioner next contends that his trial counsel was ineffective for failing to cross-examine Lamar Thomas, Jr., and William Nelson regarding their motivation for testifying, "i.e., whether they were given deals by the government." (Doc. 594 at 44.) The Government responds that this claim is without merit in that trial counsel vigorously cross-

examined all witnesses about plea bargains made. (Doc. 603 at 29.) The Court concludes Petitioner has not satisfied his burden of showing ineffectiveness on the basis alleged.

A review of Mr. Bartolai's cross examination of Mr. Nelson shows that he asked numerous questions about the plea agreement Mr. Nelson had entered into with the Government and how it affected the potential sentence. (Doc. 579 at 191-96, 199-216.) Mr. Bartolai pointed to the plea agreement at issue and highlighted how it gave Mr. Nelson benefits with respect to maximum sentences and crimes charged. (*See, e.g., id.* at 193.) No reasonable person could read the transcript of Mr. Bartolai's cross-examination of Mr. Nelson and conclude that he did not seek information about "deals" contained in the plea agreement which motivated him to enter into the agreement. (*See, e.g., id.* at 192.) Therefore, Petitioner cannot show that Mr. Bartolai was ineffective under either prong of the *Strickland* inquiry.

Mr. Thomas directly stated that testifying was part of his plea agreement. (Doc. 580 at 108.) He responded affirmatively when Mr. Bartolai asked whether there were consequences for not testifying. (*Id.* at 110.) The transcript shows further extensive questioning about the benefits of Mr. Thomas's plea agreement. (*Id.* at 113-32.) On this record, Petitioner's conclusory assertion of error is without merit.

### 5. Jury Instruction Error

Petitioner claims the Court's jury instructions violate the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), because the Court did not instruct the jury that

they were required to make their finding on drug amount "beyond a reasonable doubt." (Doc. 594 at 45.) The Government responds that the jury charge and special verdict questions show that no *Alleyne* error occurred. (Doc. 603 at 30-37.) The Court concludes Petitioner's claimed *Alleyne* error is without merit.

In *Alleyne*, the Court held that

[a]ny fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

570 U.S. at 103.

The Government points to Special Interrogatory 1.2 which asked as follows: "Please check the weight of heroin that you unanimously agree the Government proved beyond a reasonable doubt was involved in the conspiracy alleged in Count 1 of the Indictment." (Doc. 603 at 31 (citing Doc. 478 at 2.) The jury checked the line for "100 grams or more of heroin." (*Id.*) The Government also points to the charge related to this special jury question where the Court instructed the jury that "in order to find that the offense involved a certain weight or quantity of controlled substances, you must all be satisfied that the Government prove the weight or quantity beyond a reasonable doubt." (Doc. 603 at 34; Doc. 582 at 95.) Thus, both the jury charge related to the weight of heroin and the Special Verdict Question asking the jury to identify the weight of heroin involved in the conspiracy clearly indicated that the standard of proof was "beyond a reasonable doubt."

Petitioner relies on *United States v. Delgado-Marrero*, 744 F.3d 167 (1st Cir. 2014), in support of his claimed error. (Doc. 594 at 49.) His reliance is misplaced in that the district court "did not instruct the jury that they were required to make this special finding [regarding drug quantity] beyond a reasonable doubt." 744 F.3d at 187. Therefore, Petitioner has presented no basis for the Court to conclude error occurred regarding the jury's determination on the amount of drugs involved in the conspiracy.

## 6. *Sufficiency of the Evidence*

Petitioner next argues that the Government failed to present sufficient evidence as to Counts 1 and 2 and counsel was ineffective for failing to prove the lack of evidence. (Doc. 594 at 52.) The Government responds that "the evidence against Stevenson was simply overwhelming." (Doc. 603 at 28.) For the reasons discussed in the Court's consideration of Petitioner's claimed error regarding Mr. Bush, the Court finds this sufficiency error without merit.

Here Petitioner points to testimony which the jurors heard and considered in rendering their verdict but, where Petitioner only extracts allegedly favorable testimony from the record, the jury heard all of the testimony in context. For example, Petitioner's excerpt from Ms. Smith's testimony could lead the reader to think that she believed that Petitioner's involvement with Hood Promo was for music purposes only. (*See* Doc. 594 at 56.) However, a review of the transcript shows that Ms. Smith explained to Mr. Bartolai what she

meant when she said she knew what Petitioner was doing when she gave him rides to Hood

Promo:

> Q. Would you agree with me that you also told them, Yeah, I would give Mr. Stevenson rides to Hood Promo Studios in Scranton for what I only believed to be to conduct music?
>
> A. That is correct, but when I spoke with them, I told them, also, that I pretty much knew what he was doing, even though it was not discussed between the two of us.
>
> Q. But in other words, you did tell them that when you gave him rides to Hood Promo, you believed that the purpose was for him to conduct his music, right?
>
> A. That's correct.
>
> Q. That was a lie, wasn't it?
>
> A. No, sir.
>
> Q. It wasn't?
>
> A. Because many of the times when I brought him up to the studio, he was going to rehearse, but, like I also told them, that, on many occasions, when I brought him up to the studio, he was running in and running out, and then I would bring him back to Wilkes-Barre and get what I needed. So when I told them that I thought he was going in for his music, I also told them that, you know, I'm not stupid, that the other times when I was taking him, I knew what he was doing.

(Doc. 578 at 64-65.) Petitioner's elimination of the critical last clarifying paragraph exhibits

his disingenuous presentation of evidence he considers exculpatory. With this finding of

inaccuracy, the Court will not further attempt to contextualize proffered evidence. Rather,

the Court again points to the recitation of evidence presented by the Government which

Petitioner does not attempt to refute. *See supra* pp. 33-34. The jury heard the testimony quoted by Petitioner and heard the evidence set out by the Government. They returned a verdict of guilty on Counts 1 and 2, and Petitioner's unreliable assertions that the evidence was insufficient for them to do so does not satisfy his burden of showing error.

## 7. Representation During Plea Negotiations

Finally, Petitioner asserts that his trial counsel was "constitutionally ineffective in failing to properly advise him of the plea and suggesting that Petitioner would be successful at trial." (Doc. 598 at 1.) The Government responds that the claim is without merit and Petitioner "was repeatedly informed of his option to enter into a guilty plea agreement in lieu of proceeding to trial, not only by trial counsel, but also by undersigned counsel with DEA agents present." (Doc. 603 at 37.) The Court concludes that Petitioner has not shown he is entitled to relief on this ineffective assistance of counsel claim.

In *Missouri v. Frye*, 566 U.S. 134 (2012), the Supreme Court discussed the right to effective assistance of counsel in plea negotiations, citing previous cases which decided defendants' right to counsel extends to the plea-bargaining process. *Id.* at 140 (citing *Hill v. Lockhart*, 474 U.S. 52 (1985); *Padilla v. Kentucky*, 559 U.S. 357 (2010)). Though the facts differed in each case, *Frye* generally emphasized the prevalence of plea bargaining in the criminal justice system.

> The reality is that plea bargains have become so central to the administration
> of the criminal justice system that defense counsel have responsibilities in the
> plea bargain process, responsibilities that must be met to render the adequate
> assistance of counsel that the Sixth Amendment requires in the criminal

> process at critical stages. Because ours is for the most part a system of pleas, not a system of trials.

566 U.S. at 143 (internal quotation omitted). The Court noted that it did not criticize the prevalence of plea bargaining because a plea agreement could benefit both parties, adding that "[i]n order that the[] benefits can be realized . . . criminal defendants require effective counsel during plea negotiations. Anything less might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him." *Id.* at 144 (internal quotation omitted). *Frye* acknowledged the difficulty in defining the duty and responsibilities of defense counsel in the plea bargain process, noting "[t]he art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision." *Id.* at 144-45. Because of the nature of the process, the Court concluded that it may be "neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id.* at 145. *Frye* then decided the duty aspect of the Sixth Amendment inquiry on the narrow grounds presented and held "as a general rule, defense counsel has the duty to communicate formal offers for the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.*

Here there is no question whether trial counsel communicated the Government's offer to Petitioner. Rather, Petitioner contends that Mr. Bartolai "incorrectly advised him to reject the plea offer because if he was convicted at trial he would only receive a ten year sentence, and insist [sic] that he reject the government's plea offer in order to proceed to

trial." (Doc. 598 at 3.) Petitioner further avers that Mr. Bartolai gave him "false information" about his potential sentence in that his advisory guidelines range after trial was 360 months to life, rather than the (10) years counsel stated. (Doc. 604 at 6-7.) Petitioner contends that due to ineffective assistance of trial counsel he pled not guilty and proceeded to trial, losing the sentencing reduction for acceptance of responsibility that would have been applied to his sentencing guideline range if he had pled guilty. (*Id.* at 7.)

Though *Frye* declined to provide a general rule and did not address the first prong of the *Strickland* analysis in a situation where alleged ineffectiveness resulted in the rejection of a plea offer, the Court of Appeals for the Third Circuit has done so. *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).[10] In *Day*, the defendant conceded that he was notified of the terms of the plea bargain, but he asserted that his trial counsel failed to explain that he might be classified as a career offender and be subject to enhanced penalties under the Sentencing Guidelines. *Id.* at 42. The defendant maintained that, had he known of the true sentence exposure, he would have accepted the plea bargain and received a five-year sentence instead of the approximately twenty-two-year sentence he received after his trial conviction. *Id.* He alleged that the advice of counsel was "so incorrect and insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer." *Id.* at 43. In holding the defendant had stated a claim for substandard performance under

---

[10] Though *Day* was decided when the Sentencing Guidelines were mandatory, the viability of the decision in the post-*Booker* advisory-guideline era, *see United States v. Booker*, 543 U.S. 220 (2005), is evidenced by the Supreme Court's adoption of *Day's* test for *Strickland* prejudice in *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

the first prong of *Strickland*, the Circuit Court identified some fundamental considerations

related to an appropriate standard by which to judge counsel's performance:

> We cannot state precisely what standard defense counsel must meet when advising their clients about the desirability of a plea bargain and, concomitantly, about sentence exposure. Because the Sentencing Guidelines have become a critical, and in many cases, dominant facet of federal criminal proceedings, we can say, however, that familiarity with the structure and basic content of the Guidelines (including the definition and implications of career offender status) has become a necessity for counsel who seek to give effective representation.
>
> We do not suggest that, to comply with the Sixth Amendment, counsel must give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines. Nevertheless, a defendant has the right to make a reasonably informed decision whether to accept a plea offer. *See Hill v. Lockhart,* 474 U.S. 52, 56-57 . . (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice); *Von Moltke v. Gillies,* 332 U.S. 708, 721 . . . (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.").
>
> Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. *See,* for example, *Williams v. State,* 326 Md. 367, 605 A.2d 103 (1992) (counsel's conduct was constitutionally deficient in failing to advise petitioner of mandatory 25-year sentence upon conviction at trial when offer to plead guilty to lesser offense involved exposure only to 10-year sentence); *Commonwealth v. Napper,* 254 Pa. Super. 54, 385 A.2d 521 (1978) (counsel ineffective in giving no advice about desirability of plea offer with three-year maximum sentence when trial risked ten to forty years and defendant's chances of acquittal were slim).

*Day,* 969 F.2d at 43–44; *accord United States v. Bui,* 795 F.3d 363, 367 (3d Cir. 2015);

*Shotts v. Wetzel,* 724 F.3d 364, 376 (3d Cir. 2013); *United States v. Smack,* 347 F.3d 533,

538 (3d Cir. 2000). On the facts available at the time, the Circuit Court concluded that if the

defendant was correct that he was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel. *Id.* at 44. Because the Circuit Court did not know at the time of the decision whether the government in fact made a five-year plea bargain offer or what and when trial counsel had actually advised the defendant, it concluded further proceedings were necessary to determine whether trial counsel's performance was in fact deficient.[11] *Id.*

Turning to the prejudice prong, the specific question before the Court in *Lafler v. Cooper*, 556 U.S.156 (2012), was "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial."[12] *Id.* at 163. The Court identified the prejudice in such a situation as "having to stand trial, choosing not to waive it," *id.* at 163-64, and set out what a defendant must show to succeed in these circumstances:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

---

[11] On appeal, the government suggested that the defendant was "a classic second-guesser of a strategy (namely, standing trial) that was sound at the time but looks mistaken in retrospect." 969 F.2d at 44. The Court noted "that may be, but in the absence of a record we simply cannot tell." *Id.*

[12] The Court noted that the case was decided with the concession that counsel's advice with respect to the plea offer fell below the standard of adequate assistance of counsel guaranteed by the Sixth Amendment. *Lafler,* 556 U.S. at 160.

566 U.S.at 164. The Court of Appeals for the Third Circuit had previously held that "[t]he prejudice prong is satisfied 'when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing--such as an automatic increase for a 'career' offender or an enhancement for use of a handgun during a felony--which would not have occurred but for counsel's error.'" *United States v. Otero*, 502 F.3d 331, 337 (3d Cir. 2007) (quoting *United States v. Franks*, 230 F.3d 811, 815 (5th Cir.2000) (three extra months equals prejudice)).

As noted above, Petitioner maintains that "Mr. Bartolai incorrectly advised him to reject the plea offer because if he was convicted at trial he could only receive a ten year sentence, and insist that he reject the government's plea offer in order to proceed to trial." (Doc. 598 at 3.) He further contends that Mr. Bartolai's plea advice was deficient because he didn't recognize that Petitioner could not receive a ten-year sentence due to the career offender enhancement. (*Id.*at 7.) Petitioner points to the disparity between the ten years discussed during the plea phase and the 360 months he received at sentencing. (*Id.*) In the Affidavit submitted, Petitioner states, "to the best of my recollection,"

> 1.) That sometime between June and July of 2014, Attorney Gino Bartolai informed me of a plea offer from the Assistant Untied States Attorney. I was told by Attorney Gino Bartolai that, if I accepted this offer, my indictment would be thrown out, and I would plea [sic] guilty to an information charging one-count of possession with the intent to distribute a controlled substance. I was further informed that it would be to a lesser amount of drugs, I would not have a mandatory minimum sentence and the Information under § 841 would be withdrawn. The amount of drugs I would have to admit to would be no less than 20 grams, but no more than 40 grams of heroin. Upon this offer I agreed and signed a plea agreement.

2.) Sometime between June and July of 2014 I received a Court date for a change of plea hearing. Prior to the change of plea hearing Court date I was visited by Attorney Gino Bartolai. On this visit, Attorney Gino Bartolai advised me that it wouldn't be in my best interest to plead guilty to the Information because I had a good chance at winning at trial once he get the subpoena to bring Gregory Bush to testify as a Defense Witness. Attorney Gino Bartolai informed me that if we lost at trial I would get 120 to 125 month anyway and I would still preserve all my appeal rights.

3.) On the day of my change of plea hearing, when I arrived in Court but before I was brought in front of the judge, Me, Attorney Gino Bartolai and the Assistant United States Attorney had a meeting to go over the plea agreement again and to answer some questions that I had because I didn't fully understand everything in the plea agreement that I had signed. When the Assistant United States Attorney left the room, it was then once again, Attorney Gino Bartolai instructed me not to waive my rights and proceed to trial. I was immediately brought before the judge and at this time I advise the judge that I was not going through with the plea.

(Doc. 598 at 25-26.)

The Government characterizes Petitioner's claim as remorse over rejecting the plea agreement offered to him which is not a proper ground for habeas relief. (Doc. 603 at 37.) The Government maintains that recorded documents support the assertions that overwhelming evidence of guilt was presented to Petitioner and he was repeatedly urged to accept the plea offer by both trial counsel and the Government. (*Id.* at 37-38.) Regarding Petitioner's decision not to enter into the plea agreement, the Government states that, on July 8, 2014,

Stevenson was advised by trial counsel and by Government's counsel, in the presence of each other, that it was in his best interest to plead guilty pursuant to the terms of the plea agreement he signed. It was during this meeting outside the courtroom, in the presence of undersigned counsel and trial counsel

49

that Stevenson indicated he would plead guilty if his sentence was five (5) years. Undersigned counsel explained to Stevenson that in light of his prior criminal history, his sentence would be no less than ten (10) years. Undersigned counsel and trial counsel further instructed Stevenson that his chances at trial were not good and that he faced substantially more time if convicted of all charges. Stevenson could not be moved. Thereafter, Stevenson advised the Court that he wanted to proceed to trial.

(Doc. 603 at 38-39 & n.10 (citing Court Reporter Notes dated 7/8/14, MDPA 3-14-157, Doc. 5 (not transcribed)).) The Government notes that trial counsel and the Government's case agent have both confirmed the recollection of the plea discussion set out above. (Doc. 603 at 39 n.11.) The Government argues there was no deficient performance of counsel because Mr. Bartolai made every effort to encourage Petitioner to enter into a guilty plea agreement before going to trial. (*Id.* at 40.)

The Government's assertions are supported by affidavits submitted by Ms. Olshefski and Mr. Bartolai in which they confirm that they talked with Petitioner about whether he understood the potential consequences of rejecting the plea offer, they encouraged Petitioner to accept the plea agreement, and they informed him that his chances at trial were not good and he would face substantially more prison time if convicted. (Doc. 628-1 at 2; Doc. 628-2 at 1-2.) Mr. Bartolai specifically stated that he made no statement to Petitioner that he had a

"good chance" of winning at trial. . . . To the contrary, after multiple consultations with Stevenson involving discussions about the Government's evidence, the applicable law, and possible defenses, I advised Stevenson that the negotiated plea was in his best interest. In fact, I discussed with Stevenson the likelihood of additional charges that the Government would file if he rejected

the Government's plea offer, as well as the likely substantial sentence that would accompany guilty verdicts after trial.

Finally, my counsel and advice to Stevenson to accept the Government's negotiated plea offer was the result of a thorough review of the Government's evidence, as well as thorough discussions with Stevenson.

(Doc. 628-2 at 2.)

Evidence of record supports these affidavits and Petitioner's understanding of the potential consequences of his decision to reject the plea offer. At his arraignment, the penalties associated with the conspiracy to distribute a controlled substance charge against Petitioner were discussed:

The maximum penalties for that crime because of the defendant's prior criminal history include a mandatory minimum period of ten years but up to 40 years of incarceration, a fine in the amount of $8 million, a period of supervised release to include a maximum period of eight years but up to life and a $100 special assessment.

(Doc. 626 at 6.[13]) Further, in a report made in response to the Court's concern about Petitioner's misconceptions about the law and his rights under the law which he exhibited at a June 4, 2013, hearing, Attorney Bartolai confirmed in correspondence to the Court dated June 11, 2013, that Petitioner understood the charges against him and he had many meetings with Petitioner to fully discuss the details of his charges and his situation.[14] (Doc.

---

[13] The Arraignment took place on June 13, 2012. (Doc. 93.) The official transcript of the proceedings was filed on February 6, 2019. (Doc. 626.)

[14] It is acceptable for the trial judge to supplement the record with his personal knowledge of the criminal proceedings to determine whether the factual predicates asserted by the petitioner are negated or otherwise show he is not entitled to relief as a matter of law. *See Government of Virgin Islands v.*

279-1 at 3-4 (SEALED).)  Mr Bartolai specifically reported that Petitioner understood that there are statutory maximum sentences associated with the offenses, that the drug conspiracy carries a mandatory minimum sentence, and that the Government can, and did, increase both the statutory maximum sentence and mandatory minimum sentence by filing an Information of Prior Conviction; Petitioner was able to discuss in detail the extent of his criminal history; Petitioner was given copies of the United States Sentencing Guidelines as they might apply to his case; Petitioner expressed a thorough understanding of sentencing guideline topics including relevant conduct, the drug guideline and drug weights, the firearm enhancement/grouping of counts, role, acceptance of responsibility, obstruction of justice, criminal history and career offender; and Petitioner was able to confer with Mr. Bartolai on these matters and was able to apply the concepts when discussing possible resolutions to his case.  (Doc. 279-1 at 3-4 (SEALED).)

This evidence of record refutes Petitioner's assertion that he was not advised about the career offender enhancement or otherwise informed that he risked a sentence as high as 360 months if he went to trial on all charges.  As set out above, Petitioner was informed that he could receive up to forty years (480 months) on the drug conspiracy charge if convicted at trial, and Mr. Bartolai discussed Petitioner's criminal history and career offender matters with him.  Thus, the evidence shows that Petitioner was provided information which

_Nicholas,_ 759 F.2d 1073, 1075 (3d Cir.1985); _see also Solano v. United States,_ No. CIV.A. 13-4696 SDW, 2015 WL 5177628, at *10 (D.N.J. Sept. 3, 2015).

would allow him to make a reasonably informed decision whether to accept the plea offer. *See Hill*, 474 U.S. at 56-57. Because Petitioner has not shown that he was not advised of his sentencing exposure at trial and was not otherwise deprived of critical information or given misinformation regarding the plea offer, *see, e.g., Day*, 969 F.2d at 43, he has not satisfied his burden of showing that Mr. Bartolai's representation at the plea phase of the proceedings was deficient.[15]

The Court's analysis indicates that the record is not inconclusive as to whether Petitioner is entitled to relief on his ineffective assistance claim relating to the plea phase of the proceedings. Specifically, Petitioner's allegation of facts regarding advice and information he received from Mr. Bartolai before deciding to reject the Government's plea

---

[15] Having concluded that Petitioner was adequately informed of the comparative sentence exposure between going to trial and accepting the plea, the Court need not discuss the prejudice prong of the *Strickland* inquiry. However, the Court notes that the record belies Petitioner's current assertion that he would have accepted the plea offer had he been fully informed of the potential consequences of going to trial, a key element of demonstrating prejudice. *See Lafler*, 566 U.S. at 164. Although Petitioner's continued assertions of innocence (*see* Docs. 594, 604) do not preclude a showing of prejudice, *see, e.g., Hines v. Ricci*, Civ. A. No. 10-4130, 2014 WL 314430, at *1 (D.N.J. Jan. 8, 2014), Petitioner steadfastly refused to accept a plea which would allow a sentence of more than five years. (Doc. 603 at 38; Doc. 628-1 at 2.) Even if Petitioner did not know the details of his potential exposure, the plea agreement offered indicated that he faced a maximum term of imprisonment of 20 years. *See supra* pp. 2-3. Given the disparity between five years and twenty years and Petitioner's insistence on going to trial if he did not get a five-year deal, nothing in the record suggests that Petitioner would have been moved to accept the Government's offer if he thought he could face thirty years imprisonment. Rather, the record here shows that Petitioner's plea phase ineffectiveness claim is based on remorse over rejecting the plea, a decision which may have seemed sound at the time but proved to be mistaken. *See Day*, 969 F.2dd at 44. The Court further notes that the intransigence exhibited at the plea phase was consistent with previous court appearances where Petitioner insisted upon adhering to untenable legal positions, including positions advanced at the June 13, 2012, Arraignment and June 4, 2013, hearing referenced in the text.

offer is clearly resolved by the record. In these circumstances, this Court is not obligated to hold an evidentiary hearing. *See, e.g., Booth,* 432 F.3d at 545-46.

## C. Motion to Compel

Petitioner's Motion to Compel Production of the United States' June 24, 2014, Plea Agreement Proposal (Doc. 605) is properly denied. First, no order of Court is required to produce the June 24, 2014, Plea Agreement which he requests because the Plea Agreement is a document of record in Civil Action Number 3:14-CR-157. *See supra* pp. 2-3. Second, based on the Court's analysis of Petitioner's plea phase allegations, there is no basis to order the production of documents beyond those that are currently of record.

## V. CONCLUSION

For the reasons discussed above, Petitioner's 28 U.S.C. § 2255 motion is GRANTED as to Petitioner's multiplicity claim based on 18 U.S.C. § 922(g). The motion is DENIED in all other respects. The Court will address the appropriate remedy regarding Petitioner's multiplicity claim by separate memorandum and order. *See supra* p. 27. Petitioner's Motion to Compel Production of the United States' June 24, 2014, Plea Agreement Proposal (Doc. 605) is DENIED. An appropriate Order is filed simultaneously with this Memorandum.

Robert D. Mariani
United States District Judge

DATED: 2/21/19