## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRELL STEVENSON,　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　Petitioner,　　　　　　:
　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　:　**Criminal No. 3:12-CR-145**
　　　　　　　　　　　　　　　　　　:　**Civil Action No. 3:18-CV-0057[1]**
UNITED STATES OF AMERICA,　　　　　:　**(JUDGE MARIANI)**
　　　　　　　　　　　　　　　　　　:
　　　　　　　Respondent.　　　　　　:
　　　　　　　　　　　　　　　　　　:

**FILED
SCRANTON**

MAR 0 7 2022

DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL BACKGROUND

The Court issues this Memorandum Opinion as a supplement to the Memorandum Opinion issued on February 21, 2019. (Doc. 629.) One of the claims addressed in the February 2019 Memorandum Opinion was the claim raised by Petitioner in a supplement to his § 2255 motion that his trial counsel, Gino Bartolai, Esquire, did not provide adequate representation during plea negotiations. (Doc. 629 at 43-54 (citing Doc. 598 at 1).) Petitioner specifically alleged that Mr. Bartolai "incorrectly advised him to reject the plea offer because if he was convicted he could only receive a ten year sentence, and insist [sic] that he reject the government's plea offer in order to proceed to trial." (Doc. 598 at 3.) With his supplemental filing, Petitioner included an Affidavit in which he stated that Mr. Bartolai

---

[1] Because the Civil Action Number is assigned for statistical purposes only, relevant filings are docketed at 3:12-CR-145 and all docket references in this Memorandum are to the criminal docket number.

visited him at the jail before the July 8, 2014, change of plea hearing and advised him that it would not be in his best interest to plead guilty because he had a good chance of winning at trial.  (Doc. 598 at 26.)  Petitioner also stated that Mr. Bartolai repeated this advice on July 8, 2014, when they met before the scheduled plea hearing.  (*Id*.)

To assist the Court in deciding the plea negotiation ineffective assistance of counsel claim, the Court directed Attorney Bartolai and Assistant United States Attorney Michelle Olshefski (who was present for part of the July 8, 2014, meeting) to file affidavits addressing the allegations set out above and related matters.  (Doc. 625.)   After considering all evidence relevant to the issue, including the Affidavits requested, the Court concluded that Petitioner had not satisfied his burden of showing that Mr. Bartolai's representation at the plea stage was deficient.  (Doc. 629 at 53.)

Following the issuance of the Memorandum Opinion and accompanying Order (Docs. 629, 630), Petitioner wrote a letter to the Court stating that he had not had ample time to respond to the Affidavits submitted by Ms. Olshefski and Mr. Bartolai.  (Doc. 636 at 1.)  He requested that the Court allow him an opportunity to respond to the Affidavits and reconsider the related ineffective assistance of counsel claim.  (*Id*.)  The Court construed the letter as a motion for reconsideration of Petitioner's ineffective assistance of counsel claim related to the plea negotiation phase and allowed Petitioner time to respond to the Affidavits, specifically limiting his response to admission or denial of averments contained therein.  (Doc. 637.)

2

After reviewing Petitioner's response (Doc. 638), the Court concluded that

> the credibility determinations at issue in assessing the divergent renditions of events which transpired on July 8, 2014, indicate that it is prudent to hold an evidentiary hearing.   The evidentiary hearing will be limited to the issue of whether Petitioner's counsel advised him to reject the offered plea agreement and go to trial.

(Doc. 639 at 3.)  With this determination, the Court effectively granted Petitioner's motion for reconsideration of the Court's February 21, 2019, Memorandum Opinion and Order (Docs. 629, 630) on the narrow issue identified.

The Court held an evidentiary hearing on February 4, 2021, at which Petitioner was represented by Cheryl Sturm, Esquire.  (Doc. 636 (February 4, 2021, Transcript of Proceedings).)  Assistant United States Attorneys Michelle Olshefski and Francis Sempa represented the Government.  (*Id.*)   Michelle Olshefski, Gino Bartolai, and Defendant testified.  (*Id.*)  Thereafter, the parties filed post-hearing briefs.  (Docs. 689, 690.)

After careful consideration of the February 4, 2021, Transcript of Proceedings (Doc. 636 ("Hr'g Tr.")), the parties' post-hearing briefs (Docs. 689, 690), and all relevant documents, the Court finds no basis to alter its conclusion that Petitioner has not shown he is entitled to relief on the ineffective assistance of counsel claim grounded in his assertion that trial counsel was "constitutionally ineffective in failing to properly advise him of the plea and suggesting that Petitioner would be successful at trial" (Doc. 598 at 1).  (*See* Doc. 629 at 43-54.)

## II. ANALYSIS

Here the Court considers the narrow issue of whether Petitioner has credibly shown that his trial counsel, Gino Bartolai, Esq., was ineffective because he advised Petitioner to reject the signed plea agreement and go to trial. (Doc. 639 at 3.) By way of framing this limited reconsideration of the Court's prior decision, the Court notes that, in its February 2019 Memorandum Opinion, the Court found that evidence of record supported the conclusion that Petitioner understood the potential consequences of his decision to reject the plea agreement which he had signed. (Doc. 629 at 51-53.) This finding was the basis of the Court's conclusion regarding the plea negotiation ineffective assistance of counsel claim:

> Because Petitioner has not shown that he was not advised of his sentencing exposure at trial and was not otherwise deprived of critical information or given misinformation regarding the plea offer, . . . he has not satisfied his burden of showing that Mr. Bartolai's representation at the plea phase of the proceedings was deficient.

(Doc. 629 at 53 (internal citation omitted).)

The Court granted limited reconsideration of the claim that Mr. Bartolai provided ineffective assistance of counsel at the plea negotiation phase because, even though evidence showed that Petitioner had been informed of relevant considerations and encouraged to accept the plea agreement, if he were thereafter counseled to reject the plea agreement and told that his chance of winning at trial was good, the Court's conclusion that he had received adequate representation during the plea negotiation phase would be

undermined. Thus, upon reconsideration, the Court's analysis of whether Petitioner has shown ineffectiveness on the basis alleged is limited to assessing the credibility of his assertions that trial counsel, Gino Bartolai, advised him to reject the plea agreement and go to trial at some time after he had signed the agreement. (See Doc. 639 at 3.)

As a threshold matter, the Court finds that Petitioner has presented no testimony or argument to support his assertion that Mr. Bartolai visited him at the jail before the July 8, 2014, change of plea hearing and advised him that it would not be in his best interest to plead guilty because he had a good chance of winning at trial (Doc. 598 at 26). (See Docs. 686, 689.) Therefore, the Court's analysis is limited to whether Mr. Bartolai advised Petitioner to reject the plea agreement and go to trial on the date of the change of plea hearing, July 8, 2014.

The Plea Agreement at issue as negotiated and presented to Petitioner in June 2014 provided in relevant part that "[t]he Government will recommend to the Court that the defendant be sentenced to a term of imprisonment of no less than 60 months and no more than 120 months." (See Criminal No. 4:14-CR-157 Doc. 3 at 5 ¶ 9(e).) [2]

---

[2] The record shows that Petitioner drew a line through this provision and placed his initials along side of it. (See id.; see also Doc. 686 at 7 (Hr'g Tr. 7:15-18).) It is unclear exactly when this provision was crossed out, i.e., whether Petitioner crossed it out before or after he signed it. However, testimony indicates it was crossed out before the July 8, 2014, meeting with Ms. Olshefski. (Doc. 686 at 13-14 (Hr'g Tr. 13:25-14:5).)

Mr. Bartolai testified that he thought the provision was very helpful and advised Petitioner against crossing it out. (Doc. 686 at 7-8, 34 (Hr'g Tr. 7:23-8:14, 34:17-20).) Petitioner testified that he crossed out the provision because Mr. Bartolai "told me it was up to the Judge, and that I couldn't receive a sentence of less than five years." (Id. at 52 (Hr'g Tr. 52:23-25).)

The Court finds that Petitioner's claim that Mr. Bartolai advised him to reject the plea agreement and go to trial on the date set for the change of plea hearing, July 8, 2014, is not credible. First, Petitioner's prior statements and testimony on this issue at the February 4, 2021, evidentiary hearing are not supported by the record, are internally inconsistent, and are contradicted by statements made by Mr. Bartolai. Second, the argument advanced and evidence cited in support of Petitioner's version of events which transpired on July 8, 2014, are not relevant to the narrow issue before the Court. Third, Petitioner's credibility is generally questionable given his previous assertion of positions which were clearly not grounded in law or fact.

Regarding Petitioner's February 4, 2021, hearing testimony about Mr. Bartolai's advice not to plead guilty and proceed to trial, the following exchange is enlightening:

> Q. Is it your position, are you telling this Judge that Attorney Bartolai advised you to reject the Government's offer?
>
> A. Yes.
>
> Q. Okay, and according to you, that occurred in that room?
>
> A. Yes, on July 8, a month later, that's exactly what I'm telling you.
>
> Q. Tell us the exact words Attorney Bartolai used.
>
> A. She's trying to "F" you, she's trying to back-door you. This is not in your best interests.

---

The Court provides this information about the plea agreement as historical background while recognizing that it has no relevance to the determination of whether Mr. Bartolai advised Petitioner to reject the plea agreement and proceed to trial because he had a good chance of winning on July 8, 2014.

6

Q. How?

A. Because you wouldn't call the probation in there, so I guess he was saying, Look, she's trying to make you a career offender, she's acting as if she doesn't want to do it, but she's trying to back-door you.

A. He's trying to persuade you to accept the plea, he's telling you you are a career offender; right?

A. No, he's telling me I'm not.

Q. I told you you're a career offender, didn't I?

A. You told me you believe the probation would make me a career offender.

Q. Attorney Bartolai told you you were a career offender, didn't he?

A. No.

(Doc. 686 at 75-76 (Hr'g Tr. 75:20-76:17).)

Notably, when asked to repeat the "exact words" Mr. Bartolai used to advise Petitioner to reject the plea agreement, Petitioner did not indicate that Mr. Bartolai expressly told him to reject it.  Rather, Petitioner's testimony shows that his assertion that Mr. Bartolai told him to reject the plea agreement was based on inference derived from an alleged statement made by Mr. Bartolai that "She's trying to 'F' you, she's trying to back-door you. This is not in your best interest."  (Doc. 686 at 76 (Hr'g Tr. 76:1-3).)  This testimony differs from Petitioner's previous indications that Mr. Bartolai's advice was more explicit as exemplified by Petitioner's statements that Mr. Bartolai "insisted that he reject the plea offer in order to proceed to trial" (Doc. 598 at 3), and Mr. Bartolai "did in fact advise me that it

would not be in my best interest to plead guilty and that I had a good chance of winning at trial" (Doc. 638-2 at 1). Petitioner's divergent renditions of what happened on July 8, 2014, lead the Court to question the veracity of his assertions regarding the advice rendered by Mr. Bartolai on that date.

Further, if Petitioner's recitation of Mr. Bartolai's statement that "She's trying to 'F' you, she's trying to back-door you. This is not in your best interest" (Doc. 686 at 76 (Hr'g Tr. 76:1-3)) were to be found credible, Mr. Bartolai clearly did not explicitly advise Petitioner to reject the plea agreement. Rather, it was only Petitioner's interpretation of the statement that led him to reject the plea agreement. In follow-up questioning, Petitioner added that his interpretation of the statement was based on Mr. Bartolai telling him that he was not a career offender. (*Id.* (Hr'g Tr. 76:9-11).) Given Mr. Bartolai's consistent pre-hearing assertions and hearing testimony regarding his belief that Petitioner could and would be designated a career offender (*see, e.g.*, Court Reporter Notes dated August 22, 2014 (Doc. 400) (not officially transcribed); Doc. 686 at 8 (Hr'g Tr. 8:3-5)), it is not credible that Petitioner believed Mr. Bartolai was telling him he was *not* a career offender when the two spoke privately on July 8, 2014, and that Mr. Bartolai's alleged statement meant that he should reject the plea agreement.

Petitioner's alleged interpretation of Mr. Bartolai's statement is even less credible when Ms. Olshefski's recollection of events of July 8, 2021, is considered.

Q. While you were in that room and the Defendant was attempting to renegotiate the plea agreement with you, at any time, in your presence, did Attorney Bartolai tell this Defendant, Reject the plea agreement and go to trial?

A. At no time did Attorney Bartolai tell the Defendant to reject the plea agreement. Attorney Bartolai joined myself in trying to persuade Mr. Stevenson to accept the plea, that it was in his best interests to accept the plea, and both of us were telling him that it could only get worse for you, Mr. Stevenson

(Doc. 686 at 51-52 (Hr'g Tr. 51:19-52:3).) To accept Petitioner's testimony would be to believe that Mr. Bartolai encouraged him to plead guilty when in Ms. Olshefski's presence and moments later Mr. Bartolai made a statement which Petitioner interpreted to impart the opposite advice yet Petitioner did not ask Mr. Bartolai why his advice and career offender assessment radically changed within that very short period of time. This is neither logical nor believable in light of the fact that Petitioner's averred intent for wanting to meet with Ms. Olshefski on July 8, 2014, was to clarify certain aspects of the plea agreement, not to withdraw it. (*See* Doc. 686 at 56-57.) Petitioner's quoted assertions also strain credibility because the record and Mr. Bartolai's testimony indicate that he continually urged Petitioner to accept the plea agreement and the record does not show that anything transpired on July 8, 2014, that would cause Mr. Bartolai to have a last-minute change of heart regarding the benefits of the plea agreement he had negotiated with the Government.

As to Petitioner's allegations in his supplemental § 2255 filing that Mr. Bartolai "incorrectly advised him to reject the plea offer because if he was convicted he could only receive a ten year sentence, and insist [sic] that he reject the government's plea offer in

9

order to proceed to trial" (Doc. 598 at 3), Petitioner reiterated this assertion at the February

4, 2021, hearing during cross-examination by Ms. Olshefski.

> Q. I believe you also alleged that Attorney Bartolai told you to reject the plea, because even after trial, you're only going to get ten years?
>
> A. Yes, he told me that, too. Excuse me. He told me that, basically, my guideline range after trial for 100 grams of heroin would be from 100 to 125 months, he said that would be my guideline range, but he stressed that the mandatory-minimum, the Judge could not go below 120 months, I would have had 10 to life.
>
> Q. Do you have something in writing where Attorney Bartolai said that to you? An advocate of the court, an officer of the court, show me something in writing where Attorney Bartolai told you, even after trial, you're only going to get ten years?
>
> A. Come on, you know -- you don't have nothing in writing, I don't have nothing in writing for what you said, what he said, nobody has nothing in writing, it happened back in that room.

(Doc. 686 at 77-78 (Hr'g Tr. 77:20-78:10).)

Mr. Bartolai testified that he never told Petitioner that he could get ten years if he

went to trial.  (Doc. 686 at 17-18 (Hr'g Tr. 17:25-18:7).)  Ms. Olshefski testified that she

recalled Mr. Bartolai telling Petitioner if he went to trial he would not get *less than* ten years

with the mandatory minimum.  (Doc. 686 at 48 (Hr'g Tr. 48:15-17).)

Without delving into the accuracy of the statement Petitioner attributes to Mr. Bartolai

that he would only get ten years if he went to trial, Petitioner's recitation of additional

information provided indicates that he understood that Mr. Bartolai also told him that ten

years would be the minimum he could receive if he went to trial and it could be up to life.

(Doc. 686 at 77-78 (Hr'g Tr. 77:20-78:3).)  Thus, Petitioner's assertions on this issue are essentially that Mr. Bartolai provided him contradictory information about which Petitioner did not seek clarification.  Further, to believe Petitioner would be to believe that Mr. Bartolai, a seasoned criminal defense attorney, gave Petitioner partly erroneous information by telling him he would only get ten years if he went to trial, that Mr. Bartalai lied when he said he never said this to Petitioner, and that Ms. Olshefski lied when she testified that she heard Mr. Bartolai tell Plaintiff that he would not get *less than* ten years if he went to trial.  Given Mr. Bartolai's credentials and Petitioner's objective situation regarding his sentencing exposure, the Court does not find Petitioner's allegations and testimony on this issue to be credible.

Petitioner next testified that he rejected the plea agreement "because he told me to reject it, he said that I couldn't get less than ten years, no, he mis-advised me." (Doc. 686 at 79 (Hr'g Tr. 79:24-25).)  Mr. Bartolai testified that he told Petitioner that he could argue for a sentence of less than ten years under the plea agreement when he met alone with him on July 8, 2014. (*Id.* at 17 (Hr'g Tr. 17:4-11).)  He also testified that, although he did not recall his exact words, he told Petitioner he was making a big mistake in rejecting the plea agreement. (*Id.* at 18, 36 (Hr'g Tr. 18:16-19, 36:13-14).)

Ms. Olshefski testified, in connection with the plea agreement and the terms as presented to Petitioner,

I did not tell the Defendant he could not get less than ten years.  I told the Defendant, I'm arguing for ten years, and I think I'm going to get it, because, in

11

my view, you're a career offender.  Attorney Bartolai can argue for five, but I'm
going to argue for ten.

(*Id.* at 49 (Hr'g Tr. 49:2-5).)  Mr. Bartolai testified that he told Petitioner that the prosecutor's

recommendation was only a recommendation and she did not control the sentence under

the plea agreement.  (*Id.* at 9 (Hr'g Tr. 9:4-8).)  Ms. Olshefski testified that, while she was

with Mr. Bartolai and Petitioner on July 8, 2014, Mr. Bartolai did not tell Defendant to reject

the plea and they both tried to persuade him that it was in his best interest to accept the

plea and "it could only get worse" for him.  (*Id.* at 51-52 (Hr'g Tr. 51:23-52:2).)

This review of testimony indicates that Petitioner's statement that his counsel

misadvised him by telling him he could not get less than ten years with the plea agreement

is not credible.  To believe Petitioner's version of events would be to believe that Mr.

Bartolai provided misinformation to Petitioner about the Plea Agreement he had negotiated

with the Government and lied about the misinformation provided.  It would also require the

Court to believe that Mr. Bartolai said one thing when in Ms. Olshefski's presence and did a

complete reversal immediately after she left the room with no factual reason for doing so.

The foregoing discussion shows that each of the individual reasons identified by

Petitioner as the basis for his rejection of the plea agreement is not credible.  If the reasons

are considered in concert, Petitioner fares no better.  When asked to repeat the exact words

Mr. Bartolai used to advise him to reject the plea agreement, Petitioner did not mention that

Mr. Bartolai said anything about getting only ten years if he went to trial and not getting less

than ten years under the plea agreement.  *See supra* pp. 6-7.  From his recitation, it is fair to

infer that the ten-year issues arose only in the presence of Ms. Olshefski. Viewed in this

context, Ms. Olshefski's testimony on these points, *see supra* pp. 10-12, supporting that of

Mr. Bartolai takes on added significance. Thus, consideration of Petitioner's allegations

together bolsters the Court's conclusion that Petitioner's improbable and disjointed version

of what led him to reject the plea agreement on July 8, 2014, is not worthy of credence.

For the reasons discussed above, the Court does not find that Petitioner credibly

testified at the February 4, 2021, evidentiary hearing that Mr. Bartolai advised him to reject

the plea agreement and go to trial. Thus, Petitioner's testimony does not provide a basis for

the Court to alter its conclusion set out in the February 21, 2019, Memorandum Opinion that

Petitioner has not shown that Mr. Bartolai was ineffective at the plea negotiation stage of the

proceedings. (Doc. 629 at 53.)

Additional support for finding Petitioner's testimony not credible is found in the fact

that Petitioner's litany of complaints made in August 2014 about Mr. Bartolai's

representation of him during the plea negotiation phase did not include any mention of Mr.

Bartolai advising Petitioner to reject the plea agreement and go to trial. At the February 4,

2021, hearing, Ms. Sturm questioned Petitioner about a letter he had written to the

undersigned which was docketed on August 18, 2014, to which Petitioner had attached a

letter from Mr. Bartolai written to him on June 7, 2014. (Doc. 686 at 80-82 (citing Doc.

398).) Ms. Sturm confirmed that Petitioner wrote the letter because he "had complaints

about Mr. Bartolai's representation in causing [him] not to be informed and able to make a

correct decision on the plea." (Doc. 686 at 81 (Hr'g Tr. 81:10-13).) When asked what was

deficient about the representation during the plea negotiation phase, Petitioner responded

> Well, I felt that he was giving me the wrong guidelines. He was telling me that
> – excuse me – he told me, he gave me the wrong guidelines, but this is after
> the fact. . . . He told me that I could get 24 to 30 months, and in this letter, he
> says 151 to 188 [months].

(*Id.* at 81-82 (Hr'g Tr. 81:23-82:3).)

Ms. Sturm finds the letter significant for the fact that Petitioner did not wait until he

was sentenced to complain about Mr. Bartolai's representation during the plea stage. (*Id.* at

82 (Hr'g Tr. 82:4-6).) The Court finds the letter significant for the fact that Petitioner did not

include any mention of Mr. Bartolai advising him to reject the plea agreement and go to trial

in the section of the letter in which he raises the plea agreement.

Petitioner's August 2014 letter requested that the Court remove Mr. Bartolai from the

case because he had been ineffective. (Doc. 398 at 1.) Petitioner first identifies several

pretrial motion matters in support of his request. (*Id.*) He devotes two sentences at the end

of the letter to plea-agreement issues:

> Finally, Stevenson submits that counsel has prejudiced the Defendant by giving
> Stevenson less than adequate advice, and inaccurate information in regards to
> the plea agreement he signed. Stevenson submits that he was not able to
> make an informed decision regarding the plea agreement due to the
> information provided to Stevenson. (See attached letter dated June 7, 2014).

(Doc. 398 at 1.) Following receipt of the letter, the Court scheduled oral argument on the

motion to remove counsel for August 22, 2014. (Doc. 399.) The oral argument took place

as scheduled.

The matter of Mr. Bartolai's plea negotiation phase representation was discussed extensively at the August 22, 2014, hearing. (Court Reporter Notes dated August 22, 2014 (Doc. 400) (not officially transcribed).) Petitioner never said that Mr. Bartolai had advised him to reject the plea agreement and go to trial. Rather, when Petitioner spoke of his July 8, 2014, issue with the plea agreement, he said he didn't know where the base offense level was coming from. Mr. Bartolai raised the matter of Petitioner's rejection of the plea agreement on July 8, 2014, asserting that he tried to convince Petitioner that it was in his best interest to plead guilty in light of the evidence against him and the amount of risk he faced if went to trial and were found guilty. Petitioner shortly thereafter said he disagreed with some of the things Mr. Bartolai had said, but he did not deny Mr. Bartolai's recollection of July 8, 2014, events or otherwise indicate that he had been advised to reject the plea agreement and go to trial. This is an inexplicable omission given Petitioner's later rendition of the events of July 8, 2014, and the allegations regarding advice given by Mr. Bartolai at that time. In other words, Petitioner's failure to challenge Mr. Bartolai's assertion on August 22, 2014, that he had urged Petitioner to plead guilty on July 8, 2014, does not square with Petitioner's allegation over three years later in his § 2255 supplemental filing that Mr. Bartolai advised him to reject the plea agreement on July 8, 2014. Thus, Petitioner's failure to mention that Mr. Bartolai told him to reject the plea agreement and go to trial on July 8, 2014, in the August 2014 letter and at the August 22, 2014, hearing casts additional doubt on the credibility of his later allegations.

Though not directly related to advice rendered on July 8, 2014, by Mr. Bartolai,

another matter which arose at the August 22, 2014, hearing which damages Petitioner's

credibility is a June 13, 2014, letter from Mr. Bartolai to Petitioner.  Mr. Bartolai referenced

the letter in the context of explaining his efforts to keep Petitioner apprised of his situation

and the Government's plea offer.  Mr. Bartolai explained that he would not be offering the

letter into evidence because it contained information protected by the attorney/client

privilege, but he added that Petitioner had a copy of the letter and could offer it if he wanted

to do so.  When expressing his disagreements with Mr. Bartolai's testimony, Petitioner did

not say anything about the June 13, 2014, letter.

At the February 4, 2021, evidentiary hearing, Ms. Olshefski introduced the June 13,

2014, letter. (Doc. 686 at 63 (Hr'g Tr. 63:21-22 (identifying Government's Ex. 4)).)  The

letter states that its purpose "is to strongly urge you to accept the government's most recent

plea offer." (Ex. 4 at 1.)  The letter sets out Petitioner's current situation, the favorable

aspects of the offer, and his plan to meet with Petitioner "in what may be a final effort to

resolve the matter through a favorable plea agreement." (*Id.* at 2.)  Petitioner vehemently

denied ever receiving the letter.  (Doc. 686 at 65, 66 (Hr'g Tr. 65:6-7, 66:9-11).)

Petitioner's tacit acceptance on August 22, 2014, of Mr. Bartolai's factual assertion

that Petitioner had a copy of the June 13, 2014, letter—correspondence whose purpose

was to strongly urge Petitioner to accept the Government's plea offer and which advised

Petitioner in detail about his sentencing exposure and merits of the government's offer—

does not square with his vehement denial that he ever saw the letter when it was introduced

over six years later at the February 4, 2021, evidentiary hearing.  Given that Petitioner did

not take issue with his receipt and/or knowledge of the letter when Mr. Bartolai spoke of it at

the August 22, 2014, hearing which was far closer in time to the date of the letter,

Petitioner's February 4, 2021, denial of the existence of the letter is suspect.

Importantly, Petitioner has not presented any argument or evidence which could

support a finding that his allegations that Mr. Bartolai advised him to reject the plea

agreement and go to trial are credible.  Points made and argument advanced in Petitioner's

post-hearing brief (Doc. 689) are not relevant to the narrow issue before the Court, i.e.,

whether Petitioner's assertion that Mr. Bartolai advised him to reject the plea agreement and

go to trial is credible.  Though Petitioner's brief is not a model of clarity, it appears that

Petitioner seeks relief from the Court's previous determination regarding ineffective

assistance of counsel at the plea negotiation phase because Petitioner was confused about

some aspects of the plea agreement and Mr. Bartolai could and should have done more to

alleviate the confusion and convince Petitioner to go forward with the change of plea.  (*See*

Doc. 689 at 15-19.)  This argument is outside the scope of the Court's current inquiry.

Further, points ostensibly made in support of the argument do not relate to

Petitioner's credibility.  (*See id*.)   Examples of Petitioner's confusion and information/advice

Mr. Bartolai could have offered do nothing to advance Petitioner's credibility on the only

question before the Court.  (*Id*.)  Other assertions found in the brief misrepresent the record,

17

the most egregious example of which is the implication that Mr. Bartolai's testimony that "we were, like, maybe, sick of each other" is related to his alleged failure to provide Petitioner with adequate advice at the July 8, 2014, meeting.  (*See* Doc. 689 at 18 (citing Hr'g  Tr. at 31); *see also* Doc. 689 at 19.)  During his testimony, Mr. Bartolai made the comment about him and Petitioner being "sick of each other" in the context of explaining how often he had communicated with Petitioner about his case and how thoroughly he had explained Petitioner's situation to him *before* July 8, 2014.  Taken in context, no negative connotation can be drawn from the comment, and the Court is dismayed by this clear misrepresentation and others contained in the brief.

By way of further example, the record does not support the statement that "Mr. Stevenson received no advice or misadvice from his attorney" (Doc. 689 at 15).  As recited in the text, although Mr. Bartolai did not remember precise details of what he said to Petitioner on July 8, 2013, he credibly testified that he advised Petitioner on matters related to the plea agreement.  Ms. Olshefski's testimony supported that of Mr. Bartolai with examples of how he encouraged Petitioner to go forward with his guilty plea.

As summarized above, the argument made and points raised in Petitioner's post-hearing brief do not address whether Mr. Bartolai advised Petitioner to reject the plea agreement and go to trial.  Therefore, Petitioner has not presented any evidence that undermines the Court's findings on Petitioner's credibility set out above.

Finally, in addition to the matters discussed above which directly relate to the events of July 8, 2014, Petitioner's credibility is generally questionable given previous assertions of positions which were clearly not grounded in law or fact.  As the Court noted in its February 21, 2019, Memorandum Opinion, Petitioner insisted upon adhering to untenable legal positions at other legal proceedings, including the June 13, 2012, Arraignment before then Magistrate Judge now District Judge Malachy Mannion, and a hearing held before the undersigned on June 4, 2013.  (Doc. 629 at 43 n.15.)

At his June 13, 2012, Arraignment, Petitioner refused to sign a plea and took the position that he was an unsecured third-party creditor.  (Doc. 279-1 at 2 (SEALED).)  At his arraignment held on the Superseding Indictment on October 25, 2012, Petitioner did not answer to his name being called and took a position similar to that advanced on June 13, 2012.  (*Id.* at 3.)

The June 4, 2013, hearing before the undersigned was scheduled in response to Petitioner's correspondence with the Court wherein he objected to Mr. Bartolai's representation but did not want to proceed pro se.  (Docs. 252, 255, 258.)  Seeking Mr. Bartolai's withdrawal on the grounds that he could not represent Petitioner in his "private capacity," Petitioner stated that "I am simply stating that I am wiling to make a special appearance as a third party and as an authorized representative of the Defendant, and only to settle the charge and adjust the account of the defendant."   (Doc. 252 at 1; Doc. 255 at 1.)  Petitioner appeared at the hearing but informed the Court that he was not Terrell

Stevenson and that the Court lacked jurisdiction over the matter which he regarded as civil in nature. (Doc. 279-1 at 1 (SEALED).)

With these repeated instances of obfuscation during official court proceedings in this case, the Court has every reason to be skeptical of Petitioner's current allegations as to Mr. Bartolai's representation during the plea negotiation phase. This is especially so when the Court has found Mr. Bartolai's conduct during this case to be exemplary (see Doc. 639 at 3).

In sum, based on the absence of credible testimony from Petitioner at the February 2021 hearing, the ancillary August 2014 letter and hearing documentation further calling Petitioner's credibility into question, Petitioner's lack of argument or support for the allegations at issue in his post-hearing brief, and general credibility issues raised by earlier court proceedings in this matter, the Court finds that Petitioner has not shown that his allegations that Mr. Bartolai advised him to reject the plea agreement and go to trial are credible. Therefore, Petitioner has not shown any basis for the Court to alter its previous conclusion that Mr. Bartolai did not provide ineffective assistance of counsel during the plea negotiation phase of proceedings (see Doc. 629 at 43-53).

### III. CONCLUSION

Upon reconsideration of the issue of whether trial counsel was ineffective at the plea negotiation phase of proceedings, the Court concludes that Petitioner has not shown that he is entitled to relief on this claim for the reasons set forth above. Therefore, the Court's

decision rendered on February 21, 2019, (Docs. 629, 630) will be affirmed.  The analysis of

the issue set out in the February 21, 2019, Memorandum Opinion (Doc. 629 at 43-53) will

be supplemented by this Memorandum Opinion.  A separate Order will be filed.

Robert D. Mariani
United States District Judge